---

(No. 14048.—Reversed and remanded.)
LUDWIG MILLER, Appellee, *vs.* WILLIAM M. SHEA *et al.* Appellants.

*Opinion filed October 22, 1921—Rehearing denied Dec. 14, 1921.*

1. SPECIFIC PERFORMANCE—*extent of chancellor's discretion in decreeing specific performance.* Specific performance is not a matter of absolute right but rests in the discretion of the court in view of all the circumstances; but where there is a fair and valid contract, and the person seeking performance has performed or offered to perform all the terms and conditions required of him, the chancellor has no arbitrary discretion to deny relief.

2. SAME—*party seeking performance must show performance on his part.* The party seeking specific performance of a contract for a conveyance must show that he has performed all the terms and conditions of his part of the contract, or that he was able, ready and willing to perform and was prevented from doing so by the act of the other party; and the bill should allege that the party filing it has in good faith done all the contract required of him.

3. SAME—*when acts in performance of contract for conveyance are mutual.*  Where a contract for a conveyance requires money to be paid by the vendee and the deed delivered by the vendor at a certain time, the covenants are mutual and dependent, and neither party can compel the other to perform without first making tender of the money or of the deed.

4. SAME—*when complainant does not show performance on his part.*  Where a contract for the purchase of real property requires the vendee to return the vendors' abstract with his objections to "the material defects" in the title, and gives him the option to waive such defects if the vendors fail to have them remedied within sixty days, provided he notifies them of his intention to accept the title as shown, the vendors cannot be put in default for not conveying the title shown by the abstract until they are notified that the vendee has elected to accept it; and such election is not shown by merely filing a bill to compel a conveyance after a written demand calling attention to the alleged defects and insisting that the vendors carry out their part of the contract.

APPEAL from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

JAMES F. FARDY, and EDWARD J. KELLEY, for appellants.

ALFRED A. NORTON, and ALBERT G. MILLER, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county directing the specific performance of an agreement to convey real estate.

July 21, 1919, William Shea and his wife, Katherine, who were defendants to the bill and are appellants here, entered into a written agreement with Ludwig Miller, who was complainant below and is appellee here, by which appellants agreed to sell and convey to appellee a certain lot or parcel of real estate occupied by a two-story building containing two flats for family residences.  Appellants agreed

to convey to appellee a good merchantable title by warranty deed, subject to existing leases, certain assessments, and a first trust deed given on the property to secure $3000, with interest at six per cent, payable semi-annually, which appellee agreed to assume and pay as part of the consideration for the property. In addition to the $3000 appellee paid appellants $200 in cash as earnest money, to be applied on the purchase price when the sale was consummated, and agreed to pay appellants the further sum of $1600 "within five days after the title has been examined and found good or accepted by him," and a warranty deed was then to be delivered. The balance of the purchase price ($1700) was to be paid in monthly installments of $25 each, interest at six per cent per annum, the monthly payments to begin thirty days after delivery of deed. Appellants were obligated by the contract to furnish appellee a certificate of title issued by the registrar of titles of Cook county, or an abstract showing merchantable title brought down to date, or a title guaranty policy made by the Chicago Title and Trust Company. Appellee was required by the contract to furnish appellants, within ten days after receiving the abstract, a writing signed by him or his attorney specifying in detail material objections, if any, to the title, or if there were none, then to state in substance that the title is satisfactory. "In case material defects be found in said title and so reported, then, if such defects be not cured within sixty days after such notice thereof, this contract shall at the purchaser's option become absolutely null and void and said earnest money shall be returned, notice of such election to be given the vendor, but the purchaser may nevertheless elect to take such title as it then is, and in such case the vendor shall convey as above agreed; provided, however, that such purchaser shall have first given a written notice of such election within ten days after the expiration of the said sixty days and tendered performance hereof on his part. In default of such notice of election

to perform and accompanying tender within the time so limited, the purchaser shall, without further action by either party, be deemed to have abandoned his claim upon said premises, and thereupon this contract shall cease to have any force or effect as against said premises or the title thereto or any right or interest therein, but not otherwise." Time was made the essence of the contract and of all the conditions thereof. The defense set up by the answer was substantially that appellee had not sufficiently complied with the conditions and requirements of the written contract to entitle him to specific performance of it. After issue joined, the cause was referred to a master in chancery to take the proof and report it with his conclusions. No proof was offered by appellants. The master reported recommending a decree as prayed in the bill, and the court, after over-ruling exceptions of appellants, entered a decree as recommended, from which decree this appeal is prosecuted.

The contract between the parties was entered into on July 21, 1919, and required appellants to furnish the abstract of title within a reasonable time. About September 1 the abstract of title was delivered to appellee, brought down to August 6. September 3 appellee's attorney mailed to appellants' agent a written opinion pointing out twelve objections of appellee to the title. No reply was made to this communication, and on September 18 appellee's attorney wrote appellants he represented appellee and said appellee had been waiting for the deal to be consummated, and he wrote to say that immediate steps toward carrying out the contract were expected. The attorney who wrote that letter testified that three or four days after it was mailed appellants' attorney called him by telephone and said he had the letter before him. Appellee's attorney inquired what appellants were going to do about the contract, and appellants' attorney said they were not going to do anything. He told appellants' attorney appellee expected them to carry out the terms of the contract, and he replied they would

not carry it out. Appellee's attorney said they would go to court with it, and appellants' attorney replied, "Go as far as you like." October 1, 1919, appellee served each of appellants with a notice in writing that his attorney had examined the abstract and delivered to appellants' agents objections in writing pursuant to the terms of the contract: "No steps have been taken by you or your said agents to carry out or comply with the terms of the said contract. You are hereby notified that I am ready to carry out my terms of said contract, and I hereby demand that you immediately carry out your terms of the contract." At the time the notice was delivered to appellants, appellee testified William Shea told him he didn't believe he would carry out the contract as he was unwilling to sell for the price stipulated. He said he would take it up with his lawyer and see what could be done about it. Mrs. Shea told appellee, in reply to his statement that he was ready to pay the money as soon as appellants were ready to deliver, that he would have to see her husband; that the property was worth more and she didn't think they were willing to sell. The bill for specific performance was filed October 15.

The decision of this case depends upon whether appellee did all that was required of him to entitle him to specific performance. Specific performance is not a matter of absolute right but rests in the discretion of the court in view of all the circumstances. (*Farson* v. *Fogg*, 205 Ill. 326; *Gray* v. *Chicago, Milwaukee and St. Paul Railway Co.* 189 id. 400.) But the chancellor has no arbitrary discretion to deny relief. It will not be denied where there is a fair and valid contract and the party seeking performance has performed, or offered to perform, all the terms and conditions required of him. (*Baltimore and Ohio Southwestern Railroad Co.* v. *Brubaker*, 217 Ill. 462; *Ullsperger* v. *Meyer*, 217 id. 262.) The party seeking specific performance must show he has performed his part of the contract, or that he was able, ready and willing to perform it and

was prevented from performing his agreement by the act of the other party. (*Gibson* v. *Brown,* 214 Ill. 330; *Clark* v. *Jackson,* 222 id. 13; *Kissack* v. *Bourke,* 224 id. 352.) The general rule is, that where the contract requires money to be paid by the vendee and deed delivered by the vendor at a certain time those covenants are mutual and dependent, and neither party can compel the other to perform without first making tender of the money or of the deed. *Murphy* v. *Lockwood,* 21 Ill. 611; *Kimball* v. *Tooke,* 70 id. 553.

The general principles stated in the above cases, and many more to be found in the books, are applicable in all cases where it is sought to compel the specific performance of an agreement to convey real estate. We are then brought to the inquiry whether appellee brought himself within the rules governing such cases, or whether, if he failed in any respect, such failure was due to acts and conduct of appellants which amounted to a waiver by them.

The contract gave appellants sixty days after notice from appellee of material defects in the title to cure them, and if appellants did not cure them, appellee might, at his option, declare the contract null and void; but the contract also provided that appellee might elect to take the title as it was by giving appellants written notice of such election within ten days after the expiration of the sixty days given appellants after notice of defects in title to correct them. Appellee's attorney wrote appellant William Shea on September 18 that appellee was patiently waiting for him to carry out the contract and requested him to take immediate steps to do so. There is no intimation in that letter that appellee elected to waive his objections to the title and accept it as it was, which his contract obligated him to do if he did so elect. In the telephone conversation between the attorney for appellee and attorney for appellants three or four days after that letter was written there was no suggestion that appellee had elected to waive his objections to the title and take it as it was. In the written demand made by ap-

pellee October 1 on appellants there was no notice that appellee had elected to take the title as it was. That notice and demand called attention to the objections of appellee to the title and that no steps had been taken by appellants to comply with the terms of the contract, and stated appellee was ready to carry out his part of it and demanded that appellants carry out their part of it. Appellants would reasonably understand from all that was written or spoken that appellee was insisting the objections he had made to the title should be corrected as part of appellants' duty in carrying out the contract. The contract obligated appellants to convey appellee a good merchantable title. If the abstract showed there were material defects in the title appellants were by the contract given sixty days to remove or cure them, and if they failed or refused to do so appellee had the option to rescind the contract or to elect to take the title as it was, upon giving appellants notice in writing of such election within ten days after the expiration of the sixty days allowed appellants to cure the defects of title. Appellee never notified appellants of his election to take the title as it was and appellants were never put in the position of refusing to convey such title. Written notice of such election was essential to entitle appellee to enforce the specific performance. In the absence of such election appellee might avail himself of some other remedy, but not of specific performance. Cases we have above cited, and the authorities generally, hold that to entitle a party to compel specific performance of such a contract as this he must have performed or offered to perform all the terms and conditions of the contract on his part.

Appellee contends that by the misconduct of appellants he was relieved from the necessity of tendering payment and complying with the terms of the agreement in accordance with its provisions. There was never any refusal of appellants to convey the title as it then was, for they were never notified appellee had elected to accept it. As we have

before stated, the refusal of appellants to make a deed can not be said to be a refusal to convey the property subject to such objections as appellee had made to the title. The statement of appellants to appellee on October 1 that they would not carry out the contract at the price mentioned in the instrument,—that the property was worth more money,—and the statement of appellants' attorney to appellee's attorney that they would not carry out the agreement, may, as counsel contend, indicate that the appellants would have refused to make the conveyance if appellee had notified them he elected to take it as the title then was, but the facts are that appellants were never put in the position of refusing such demand, for the reason no such demand was made. So far as this record shows, appellants never heard that appellee regarded the title as shown by the abstract to be a good merchantable title, or that he would accept a conveyance without the material defects he had notified appellants existed being cured, until the bill was filed.

Counsel say if an election to take the title as it was was a condition precedent, filing the bill within the time given by the contract for making the election is a sufficient election to entitle appellee to the relief. It was necessary to appellee's right to file and maintain the bill that he had not failed to comply with the agreement on his part but had done everything required of him by the agreement to entitle him to demand specific performance. (*Bothwell* v. *Schmidt,* 248 Ill. 586.) Until he had taken all the steps required of him by the agreement no right accrued to appellee to file a bill to compel specific performance, and the bill should allege that the party filing it had in good faith done all the contract required of him. *Sloane* v. *Wells,* 141 Ill. 502; *Kemp* v. *Humphreys,* 13 id. 573; *Wood* v. *Sheffer,* 248 id. 617; *Mitchell* v. *White,* 295 id. 135; *Doyle* v. *Teas,* 4 Scam. 202.

We deem it not improper to say that it would be inequitable to allow appellants to retain the earnest money

paid by appellee, but the proofs fail to make a cause justifying a decree for specific performance.

The decree of the circuit court is reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*