[Civ. No. 25083.   Second Dist., Div. One.   July 25, 1961.]

SIDNEY M. WEISBERG et al., Respondents, v. VERNON
E. ASHCRAFT et al., Appellants.

W. Garfield McDaniel for Appellants.

Sky, Winkler & Fischmann and Harry I. Sky for Respondents.

WOOD, P. J.—The complaint alleged that on May 28, 1957, and on May 29, 1957, the plaintiffs entered into written agreements with defendants whereby defendants (Mr. and Mrs. Ashcraft) agreed to sell to plaintiffs certain real property (a

vacant lot) ; and the agreements consisted of a deposit receipt and escrow instructions, copies of which were attached to the complaint.

The prayer of the complaint was for specific performance, and for damages for failure to perform the agreements.

(The escrow company was named as a defendant, but the body of the complaint does not refer specifically to that company.) The sellers (the Ashcrafts) will be referred to herein as the defendants.

Judgment was in favor of plaintiffs for specific performance and for damages against defendants.

Defendants appeal from the judgment and the order denying their motion for a new trial.

Appellants filed an opening brief, wherein they assert that the evidence does not support certain findings and that the findings do not support the judgment. Respondents (plaintiffs Weisberg) did not file a brief or appear on the appeal.

The escrow instructions, dated May 29, 1957, provided in part, as follows: The escrow should be closed 30 days from date. The purchase price was $6,000. The broker would deposit $200 in the escrow. Buyers would deposit $300 on or before June 1, 1957. Buyers would also deposit $2,972, and would execute a trust deed "in the amount of $2,528.00" in favor of sellers. Time is of the essence of the instructions. The sellers would give clear title to the property; but easements of record thereon, if any, should be subject to approval of the buyers.

On May 29 the $200 was deposited in escrow, and on June 5 the $300 was deposited. The buyers did not deposit in escrow the $2,972, nor deliver into escrow the trust deed for $2,528, within the 30-day period for closing the escrow. It thus appears that the buyers had not complied with the escrow instructions within the escrow period.

About June 26 the escrow company received a title report which showed there was an easement of record over the rear 5 feet of the land. On June 27 the escrow company sent a copy of that report to the buyers and requested them to approve and return the report. The approval of the report (approval of easement) was not returned within the 30-day escrow period. It thus appears that the sellers could not convey clear title within the escrow period.

On July 2 the sellers notified the buyers and the escrow company, by letter, that the sellers rescinded their agreement

to sell the property, for the reason the buyers had not deposited the money in the escrow within the time required.

On July 5 (a week after the escrow closing date), and after the buyers had received the notice of rescission, they deposited $3,020 in escrow and they also delivered into escrow their approval of the title report (approval of easement). Also, they delivered the trust deed and note.

On July 12 the sellers sent a letter to the escrow company wherein they again stated that they rescinded the agreement for the reason the buyers had not deposited the money within the time required; and they requested the escrow company to accept the letter as notice of cancellation of the escrow.

There was evidence to the effect that the defendants were not owners of the property. Apparently, Mr. Thompson, the owner of the property, had entered into an agreement on July 15, 1955, to sell the property to Mr. and Mrs. Bowen, and those purchasers had assigned (on July 17, 1956) their rights under the agreement to the defendants Ashcraft—and there was an unpaid balance of $3,440.30 under the agreement. The escrow file indicates that on June 24, 1957, Mr. Thompson sent to the escrow company the agreement for sale of the property, and also sent a deed to the property, and authorized the escrow company to ''use'' the deed provided that before July 24 the company held $3,440.30 for him. On August 2 Mr. Thompson requested the return of all papers he had sent to the escrow. The agreement was returned, but it does not appear whether the deed was returned.

The court found, among other things, as follows: The buyers or the sellers had not performed the agreement within the period stated therein, but that any delay in performance was minor and trivial and the buyers or the sellers were not injured thereby. Although the ''agreements'' provided that time was of the essence, said ''agreement'' provided further for an extension of the 30-day period for performance in the event of possible delay, and such provision constituted a waiver of the requirement for strict compliance with the provisions of the ''said agreements.'' The ''payment provisions'' of the agreements were inserted to induce prompt performance but were not intended by the parties to work a forfeiture in case of a failure to perform strictly in ''point of time.'' The agreements were fair and reasonable, and the sale price and terms were fair and reasonable. The agreements were not terminated in the manner required thereby. Although the buyers delayed in making payments, they fully complied with and performed

under said agreements immediately upon demand, and at all times acted in good faith. The buyers at all times stood ready and willing to pay the sellers the sums of money provided in said agreements and to execute the "notes and deeds of trust" as provided therein, and tendered "such performance," but the sellers rejected said tender and have failed and refused to execute a conveyance of property as provided for in said agreements. As a direct and proximate result of the failure and refusal of sellers to convey the property to buyers, buyers had been damaged in the sum of $35 a month from July 5, 1957, for the loss of use of the property.

The judgment ordered that the *sellers* deliver to the escrow company (1) a warranty deed which "shall grant" the property to buyers free and clear of all encumbrances, and (2) a "proper Joint Protection Policy of Title Insurance of standard form containing usual title company exceptions bearing a liability" of $6,000. The judgment also ordered that the sellers pay to the escrow company "the following sums; or suffer same to be taken out of moneys received by [the escrow company] . . . on their behalf:" (1) damages "to buyers" in the amount of $1,427.50, and an additional amount of $35 per month commencing April 26, 1960, and continuing until the property is conveyed to buyers as provided in the judgment; (2) buyers' costs of suit; (3) damages to the escrow company in the amount of $377.50; (4) escrow company's costs of suit.

The judgment ordered that the *buyers* deliver to the escrow company a first trust deed, "covering" the property in favor of the sellers, in the amount of $2,528 and securing a note, in the same amount, in favor of the sellers; and that the buyers pay to the escrow company $3,472 for delivery to the sellers.

The judgment ordered that the *escrow company,* after receiving the amounts "called for" in the judgment, credit and debit such amounts pursuant to the terms of the judgment.

The judgment also provided that "in default" of sellers to convey the property to buyers as ordered, the judgment should have "the same effect and operation as such deed."

As above stated, the respondents have not filed a brief, and have not appeared at all in the appeal proceedings. They were notified, pursuant to rule 17, subdivision (b), with reference to filing a brief within 30 days after such notification. They were also notified of the date the case was on the calendar for hearing on appeal.

Said rule 17, subdivision (b), provides: "If the respondent's brief is not filed within the time prescribed in subdivision

(a) of rule 16, the clerk of the reviewing court shall notify the parties by mail that the case may be submitted for decision on the record and on the appellant's opening brief unless the brief is filed within 30 days after the date of mailing of the notification or good cause is shown for relief. If the brief is not filed within that period . . . the court may accept as true the statement of facts in the appellant's opening brief and . . . may submit the case for decision on the record and on the appellant's opening brief.'' ▮▮ In *Cravens* v. *Coghlan,* 154 Cal.App.2d 215 [315 P.2d 910], wherein respondent said he did not desire to file a brief, it was said, at page 217: ''In such a case the appellate court is under no duty to look up the law, if any, in support of the judgment, may assume that the respondent has abandoned any attempt to support the judgment, and may also assume that the point or points made by appellant are meritorious.''

In the present case respondents have elected not to answer the contentions of appellants, but their reason for such failure, of course, is not apparent. Appellants' contentions involve a consideration of all the testimony and the numerous documents in evidence. Many complex factual and legal questions are involved on the appeal.

Some of those questions are, as follows: 1. The effect of buyers' failure to deposit the money until a week after the expiration of the 30-day escrow period—and after notice of rescission. 2. The effect of the inability of the sellers to convey clear title (by reason of the easement) within the 30-day escrow period. 3. The effect of the provision of the judgment ordering the sellers to convey the property by warranty deed— where escrow instructions do not designate such a deed, and where it does not appear that the sellers were owners of the property. 4. The effect of the provision of the judgment that in the event of the default of the sellers to so convey the property, the judgment would have the same effect and operation as a warranty deed. 5. Whether the provisions of the escrow instructions superseded the provisions of the deposit receipt, or whether the two documents should be read together, —where there was no finding as to the intention of the parties with respect thereto. (See *Swanson* v. *Thurber,* 132 Cal.App. 2d 171, 180 [281 P.2d 642].) 6. Whether the doctrine of substantial performance was applicable in an action for specific performance of an escrow agreement. 7. Whether the evidence supports the findings to the effect: (a) there was a waiver of strict performance; (b) the sale price was fair and reasonable;

(c) the escrow agreement was not terminated in the manner required thereby; and (d) the buyers were damaged in the amount awarded.

██ Appellants state in their brief that there was no testimony that the contract price of the property was fair and reasonable. In an action for specific performance the plaintiff must prove that the agreed price is fair and reasonable. (*Davy* v. *Ogier*, 87 Cal.App.2d 835 [198 P.2d 92]; *Dennis* v. *Overholtzer*, 178 Cal.App.2d 766 [3 Cal.Rptr. 193].) Since respondents herein have failed to file a brief, the court is entitled under said rule 17, subdivision (b), to accept as true appellants' statement in their brief regarding lack of evidence that the price was fair and reasonable. It therefore appears that the trial court erred in finding that the sale price was fair and reasonable.

Appellants also state in their brief that the evidence does not support the findings hereinabove specifically mentioned. In support of such statements they refer to certain testimony and documentary evidence. Since respondents have failed to file a brief and refer to contrary testimony or other evidence, if any, this court is entitled to assume, under the provisions of said rule, that there is merit to appellants' statements.

██ Appellants assert that the conclusion of the court that "any delay in the completion of the escrow was minor and trivial" is not supported by any testimony. That statement of the court is in effect a statement that the sellers had substantially performed the agreement. In *Altadena Escrow Corp.* v. *Beebe,* 181 Cal.App.2d 743 [5 Cal.Rptr. 530], it was said, at page 745: "It is established in this state that the terms and conditions of an escrow must be strictly performed. . . . The doctrine of substantial performance does not apply." In *Love* v. *White,* 56 Cal.2d 192 [14 Cal.Rptr. 442, 363 P.2d 482], it was said, at page 194: "In this state the terms and conditions of an escrow must be performed. The doctrine of substantial performance does not apply, and no title passes prior to full performance of the terms of the escrow agreement." In the present case the trial court erred in concluding or finding that any delay in performance of the escrow agreement was minor and trivial, and that the buyers or the sellers were not injured thereby.

██ As above indicated, the judgment ordered that the sellers deliver to the escrow company a warranty deed which "shall grant" the property to the buyers free and clear of

all encumbrances. The judgment also provided that in default of the sellers to convey the property to the buyers, the judgment should have the same effect and operation as a warranty deed. As above stated, there was evidence to the effect that the sellers (defendants) were not owners of the property, that they were assignees of an agreement whereby the owner (Mr. Thompson) had agreed to sell the property to the Bowens, and that a balance of $3,440.30 was unpaid under the agreement.

In *Milkes* v. *Smith*, 91 Cal.App.2d 79 [204 P.2d 419], it was said, at pages 81 and 82: ''It is well settled that where a vendor has no title or interest in the land he contracts to convey he cannot be required specifically to perform. The decree would be of no avail for equity will not compel him to obtain title. [Citations.] Where the vendor is, however, the equitable owner of the property and has the right to call for the legal title, he may be compelled by the vendee to specifically perform the contract of sale. [Citations.] It is likewise well settled that if a vendor has *any* interest in the property he has contracted to convey, the vendee at his option may enforce the contract with respect to whatever interest the vendor possesses, and may also receive compensation for the deficiency in performance.'' In the present case, in view of such condition of the title to the property, it is apparent the form of the judgment with respect to specific performance is erroneous. It is to be noted further that the judgment directs the sellers to deliver the deed to the escrow company, and directs the buyers to deliver money, a trust deed, and note to the escrow company; but the judgment does not state when such deliveries should be made. The judgment does not direct the escrow company to record or deliver the deed or trust deed, or to deliver the money or documents to the parties.

The appeal from the order denying the motion for a new trial is dismissed.

The judgment is reversed.

Fourt, J., and Lillie, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 20, 1961.