John **SUPRUNIUK**

v.

**Ilija PETRIW and Anastasia Petriw.**

Supreme Judicial Court of Maine.

April 4, 1975.

Clark & Jones, P. A. by Dennis L. Jones, Gardiner, for plaintiff.

Smith & Stein, by Jeffrey A. Smith, Hallowell, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

The parties to this controversy are Russian speaking farm owners of the Richmond area. The Plaintiff, John Supruniuk, seeks an order of specific performance of an agreement written by one of the Defendants, Ilija Petriw, in Russian, to sell

the Plaintiff the Defendants' 100 acre farm. After the completion of testimony before a jury, the presiding Justice took the case from the jury and ordered the Defendants to convey the property to the Plaintiff upon payment by the Plaintiff of the agreed purchase price. The Defendants appealed. We sustain the appeal.

### The Threshold Question

■ The Defendants' contention that the presiding Justice erred in directing a verdict for the Plaintiff and in not allowing the case to go to the jury raises a threshold question. *Did* the presiding Justice direct a verdict for the Plaintiff (M.R.C.P., Rule 50) or was he only dispensing with the assistance of the jury which had been sitting in a purely advisory capacity? More precisely, was this action seeking equitable type relief heard by a jury "as if trial by jury had been a matter of right"? (M.R.C.P., Rule 39(d).)[1] If so, the Justice was in effect directing a verdict as to facts entitling the Plaintiff to the equitable relief sought. If such is the case, his action can be upheld only if a verdict for the Defendants could not have been sustained upon any reasonable interpretation of the evidence, including every justifiable inference, viewed in the light most favorable to the Defendants. Boetsch v. Rockland Jaycees, Me., 288 A.2d 102 (1972); Manchester v. Dugan, Me., 247 A.2d 827 (1968); Field, McKusick and Wroth, Maine Civil Practice, § 50.2.

■ Or was the jury participating only to act in an advisory capacity, available if the Justice chose to submit to it questions of fact? M.R.C.P., Rule 39(d). In that case, the Justice could dispense with the jury's advice if he did not desire it, and make his decisions on facts unassisted. The test then would be whether the Justice's finding that the Plaintiff was entitled to specific performance was clearly erroneous. M.R.C.P., Rule 52(a).

Although the situation as revealed by the record is not entirely clear we are satisfied that it was intended that the jury verdict, if one was reached, should have the same effect "as if trial by jury had been a matter of right".

The Defendants' answer demanded jury trial. There was no finding by the Court (as, on the issues raised by this complaint and answer, there could have been) that a "right of trial by jury . . . does not exist under the Constitution or statutes of the State of Maine." M.R.C.P., Rule 39(a).

The presiding Justice, in taking the matter from the jury's consideration, used these words:

"THE COURT: Madam Foreman and members of the jury, frequently after the evidence has been offered in a case, evidence from both sides, sometimes even before that time, it becomes apparent to the Court that there is no issue for a Jury. Sometimes as I think I'm about to say in this case, the facts are such that there has been no legal issue raised upon which a jury could differ. It could, in the eyes of the law, be impossible for you to arrive at a decision that would be contrary to the rights of this plaintiff, because the defendant has not raised any factual issues, which would cause you to decide anything in his favor.

Now, although I have said to this Jury on many occasions that the facts are for the Jury to determine and not for the Court, when we reach the situation in a case where there have been no factual issues raised, if you see what I mean, there is no difference upon which—no facts upon which a jury could differ, it

---

1. "(d) Advisory Jury and Trial by Consent. In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury, or the court, with the consent of the parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right." M.R.C.P., Rule 39(d) (formerly designated Rule 39 (c)).

no longer becomes a question of fact, but becomes a question of law, and the Court then must assume the responsibility of deciding the case without the Jury in the absence of any dispute of the facts. At this stage, the plaintiff, Mr. Supruniuk, has moved for a verdict in his favor, and I am going to grant it for this reason."

The docket entry refers to the hearing as "Jury trial" and records the Justice's action as

"Case withdrawn from Jury with a directed verdict of judgment for the Plaintiff."

Rule 39(d) makes clear that in matters not triable of right by a jury, the Justice may not order trial "with a jury whose verdict has the same effect as if trial by jury had been a matter of right" without consent of the parties. Although no such order or consent appear in the record, both are implicit in the Justice's statement (which drew no objection from counsel) to the jury, and from the absence of any move to correct the docket entries.

We are satisfied that the presiding Justice was, in effect, directing a verdict as to the factual issues involved.

Therefore, the question before us is whether there was credible evidence presented which could have justified the jury in drawing factual conclusions which would have denied the Plaintiff the specific performance he sought.

*The Undisputed Facts*

It is undisputed that the Defendant Mr. Petriw made known to the Plaintiff his desire to sell his farm and that after a discussion they agreed upon a purchase price of $6500.00. Mr. Petriw (who spoke only Russian) prepared an agreement written in the Russian language which the Plaintiff, Mr. Petriw, and Mr. Petriw's wife, Anastasia, also signed.[2] The Plaintiff was furnished with a copy of the deed which had conveyed the farm to the Defendants and he initiated procedures to obtain a loan from the Federal Housing Administration to enable him to complete the purchase, which was to be not later than July. Sometime after that Mr. Petriw decided that he did not wish to sell the farm to the Plaintiff and he told the Plaintiff that he would not complete the agreement.

*The Disputed Facts*

Mr. Petriw insists that the writing did not include all the terms of their agreement. He testified (through an interpreter) that he was to retain the right to live upon the farm until his death and that during Mr. Petriw's life the Plaintiff was to have the use of the farm as a depository for his chicken manure. He testified that the Plaintiff promised to give him a deposit of $200.00 *after the agreement was signed* and that the Plaintiff, who was also a dental technician, also promised to make him some dentures. He said the Plaintiff never made the impressions for the dentures or paid the $200.00.

Mr. Petriw said that the Plaintiff insisted, over Mr. Petriw's objections, that Mr. Petriw should be the one to write out their agreement in longhand. He said that the agreement which he wrote for their signatures did not contain the promise to make the dentures or the reservation of the life estate because

2. The following is a translation, accepted as accurate by the Plaintiff and Defendants, of the written agreement:
"AGREEMENT
I, Ilija Petriw, and my wife, Anastasi Petriw are selling one farm (approximately one hundred acres) which is located on Langdon Road, Richmond, Maine.
I, John Supruniuk, am buying this farm and I am paying two hundred dollars ($200.-00) as my deposit and after the closing deal (approximately in July, not later) I shall pay the additional six thousand and three hundred dollars ($6,300.00)
We confirm this by signing:
1. Owners of the farm:
                    Ilija Petriw
                    Anastasi Petriw
2. The buyer of the farm  John Supruniuk"

"He told me at the time of making the agreement that we would not write everything down because it would take too much time; we'll put in just the main points, and the rest we'll put in when we get ready to sign the main papers."

The Plaintiff testified that he paid the $200.00 deposit by check in hand. Mr. Petriw denies this. The Plaintiff says there was no agreement that he should make dentures for the Defendant nor any agreement that a life estate was to be retained by the Defendant. The Plaintiff did say he told Mr. Petriw that Mr. Petriw could remain on the property for one year. The Plaintiff denies that he gave Mr. Petriw directions as to the contents of the written agreement. The Plaintiff testified that when his loan was approved by the F.H.A. and his money was available he went to Mr. Petriw and asked Mr. Petriw to go to an attorney's office to execute the deed to the Plaintiff and that Mr. Petriw refused to go with him to complete the sale. The Plaintiff's testimony, given in imperfect English, leaves it unclear whether he actually tendered the balance of the purchase price to Mr. Petriw and it was refused or whether he only told Mr. Petriw that the money was available for payment as soon as the deed was executed and approved.[3] Mr. Petriw denies that the Plaintiff came to him and asked him to go with him to the attorney's office to complete the transaction. He says that in June he met the Plaintiff who, "at that time . . . knew that [I] did not wish to sell the farm", and that "he shook my hand, and we parted as good friends".

*The Status of the Plaintiff's Proof at the Close of the Testimony*

The conflicting testimony above discussed raised several issues the resolution of which might have resulted in findings of fact by the jury, one or more of which findings could have denied the Plaintiff the specific performance he sought. In each instance the determination of the issues rested largely in the respective amounts of credibility the jurors gave to the testimony of the Plaintiff and Mr. Petriw, whom they observed in person.

The jury could have found that, as the Defendants alleged, the Plaintiff with a fraudulent purpose induced Mr. Petriw to draw the written agreement and to omit any reference to the dentures or to a reservation of a life estate to Mr. Petriw.[4] *See* Eldridge v. May, 129 Me. 112, 115, 150 A. 378, 379 (1930). The jurors could have believed Mr. Petriw's version that the Plaintiff immediately broke his agreement to pay the $200.00 "deposit" or to make the dentures and that one or both breaches were sufficiently substantial to justify the Defendants in treating the agreement as no longer binding upon them. *See* Weisberg

---

3. The Plaintiff testified, during direct examination:

"A I called him to go with me to a lawyer, I mean, Mr. Pease, and sign deed for sale, that he sell me all of the land. I give him rest of money, and he refused to go.
Q And what did you indicate to him as to the money at this time, if anything?
A Well, I have to pay him rest, $6,300.00.
Q And he at this time refused?
A Refused."

Later, during cross examination, the Plaintiff continued:

"THE WITNESS: Oh, I'm coming to his place, to his house, and said, 'now is the time, come on with me, we'll sign, you sign, and you get your rest money'.
Q And this was at the farm in Richmond?
A No, in Richmond house.
Q And did you present the money to him at that time?
A He didn't sign—we didn't go to the lawyer, so I couldn't give him money over his head.
Q Did you present the money to him at that time?
A Yes. I said 'I have money'.
Q Did you present the money to him?
THE COURT: I think the import of what is going on, Mr. Dawson, is clear. You keep asking him if he presented the money, and the witness has told us that he asked the defendant to go with him to wherever it was that he wanted him to go so that the money could be obtained. I think it is clear, is it not, what the witness is saying?"

4. See Horner v. Flynn, Me., 334 A.2d 194 (1975), for a discussion of jury instructions concerning the quality of evidence required for proof by a preponderance of the evidence in a civil action for fraud.

v. Ashcraft, 194 Cal.App.2d 225, 14 Cal. Rptr. 817 (1961).

Or the jurors could have interpreted the testimony relating to the Plaintiff's demand for performance in such a manner that it would not have constituted either tender of the purchase price or excusable nontender at law. *See* Miller v. Shea, 300 Ill. 180, 181, 133 N.E. 183, 184, 185 (1921).

We conclude that in the posture in which the case was tried these questions of fact, at least, should have been answered by the jury by a special verdict in the form of special written findings, by means of which the presiding Justice would then have determined the Plaintiff's claimed entitlement to the equitable type of relief sought. M.R.C.P., Rule 49(a).

### The Plaintiff's Check Book

Inasmuch as this matter will probably be tried again, we feel that another claimed erorr should be discussed briefly. The Plaintiff offered, and the Court admitted, over the Defendants' objections, what the Plaintiff called "the journal book what I keep my records when I pay check to some people . . . . Each check when I write," and which the Defendants refer to as the Plaintiff's "check stubs". In fact, the exhibit is recognizable as a portion of a type of check book which provides a page on which may be recorded the check number, date, name of payee and amount of the several checks drawn (together with the balance remaining on deposit)—contrasting in form only with the familiar type of small book in which each check has a separate stub for the recording of such information.

The book contained the entry:

"553⁵⁄₁₀ Petriw & Anastasia 200 = 275.14 [balance]"

The exhibit was offered as an original record to prove the payment of the $200.00 "deposit". (The check—if one in fact was given—was never presented for payment.) Defendants argue that this journal is not admissible under the common law "shop-book rule" or under 16 M. R.S.A. § 356,[5] and we agree. In construing that statute we have held that "memoranda made for the convenience or purposes of the one who made them" are not intended to be included under the exception.[6] Other than that the Plaintiff was a farmer who needed to keep some record of such of his expenditures as were made by check, little else was established to show the regularity, objectivity, and reliability upon which this exception is founded.

It appears to us that the exhibit did not qualify for admission.

The entry will be:

Appeal sustained.

Remanded to the Superior Court for retrial.

All Justices concurring.

5. "§ 356. Accounts admissible though hearsay or self-serving

An entry in an account kept in a book or by a card system or by any other system of keeping accounts shall not be inadmissible in any civil proceeding as evidence of the facts therein stated because it is transcribed or because it is hearsay or self-serving, if the court finds that the entry was made in good faith in the regular course of business and before the beginning of the civil proceeding. The court in its discretion, before admitting such entry in evidence, may, to such extent as it deems practicable or desirable but to no greater extent than the law required before June 30, 1933, require the party offering the same to produce and offer in evidence the original entry, writing, document or account from which the entry offered or the facts therein stated were transcribed or taken, and to call as his witness any person who made the entry offered or the original or any other entry, writing, document or account from which the entry offered or the facts therein stated were transcribed or taken or who has personal knowledge of the facts stated in the entry offered."

6. Hunter v. Totman, 146 Me. 259, 268, 80 A.2d 401, 406 (1951) ; Rodrique v. Letendre, 158 Me. 375, 377, 184 A.2d 777, 779 (1962) ; Morgan v. Paine, Me., 312 A.2d 178, 184 (1973).