[No. A114930. First Dist., Div. Four. Feb. 28, 2008.]

SIMON DAVID AVIEL et al., Plaintiffs, Cross-defendants and Respondents,
v.
CHRISTINA NG et al., Defendants, Cross-complainants and Appellants;
KHALIL ABUSHARKH et al., Cross-defendants and Respondents.

810

812

COUNSEL

Patrick T. Galligan for Defendant, Cross-complainants and Appellants.

Jackson & Wallace, Gabriel A. Jackson, Todd M. Thacker and Christine A. Huntoon for Plaintiffs, Cross-defendants and Respondents Simon David Aviel and Joann Aviel.

Hoge, Fenton, Jones & Appel, Michael D. McSweeney and Derek L. Austin for Cross-defendants and Respondents Khalil Abusharkh and Dalal Metwally.

OPINION

**REARDON, Acting P. J.**—The commercial lease pertinent to this appeal was extinguished by a trustee's sale under a deed of trust. The deed of trust was senior to the lease by virtue of a clause in the lease subordinating it to future mortgages. In this appeal from a judgment, after summary adjudication and court and jury trials, appellants,[1] the former lessees of the foreclosed property, continue to assert that the lease was not forfeited because the subordination clause encompassed only mortgages, not deeds of trust. As we explain, under long-settled legal precedent the two instruments are functionally and legally the same. Appellants also assert that the trial court awarded damages to respondents for appellants' postforeclosure occupancy of the premises on an improper basis. We conclude the damage award was appropriate. Accordingly, we affirm the judgment in its entirety.

## I. FACTUAL BACKGROUND

In September 1998, the Ngs entered into a commercial lease with Don Junkin for the basement suite of 415 Grand Avenue, South San Francisco, for the purpose of operating a restaurant called the Grand Palace Restaurant. It was a six-year lease with three five-year renewal options. Monthly rent began at $4,780.

The lease included a subordination clause, as follows: "This lease shall be subject and subordinate to all underlying leases and to mortgages which may now or hereafter affect such leases or the real property of which the premises

---

[1] Appellants are Christina Ng, Francis Ng, Jun Yu Wu and Fu Yuan Enterprises, Inc., doing business as Grand Palace Restaurant (collectively, the Ngs). Respondents are Simon David Aviel, Joann Aviel, Khalil Abusharkh and Dalal Metwally, trustee of the Metwally Trust.

form a part, and also all renewals, modifications, consolidations, and replacements of the underlying leases and mortgages. Lessee agrees to execute such estoppel letters or other documents required to confirm the same."

In December 2000, Howard Sylvester borrowed $300,000 from respondent Simon David Aviel to purchase the property from Junkin, securing the loan with a deed of trust in favor of Aviel. Aviel acquired the property through a trustee sale in March 2002. Thereafter, he successfully negotiated a new lease with each of the 415 Grand Avenue tenants except the Ngs. Aviel attempted to negotiate a new lease with the Ngs and accepted payments from them totaling $18,739.26 for the period April through August 2002. Thereafter, Aviel returned the rent checks to the Ngs; they put them in a separate blocked bank account. At times the parties were close to an agreement but they never actually signed a new lease.

In June 2003, Aviel filed an unlawful detainer action against the Ngs. The Ngs remained in possession of the property until November 17, 2003, at which time they moved down the street to 359 Grand Avenue.

Also in November 2003, Aviel sold the property to respondents Khalil Abusharkh and Dalal Metwally, trustee of a living trust. Thereafter he converted the unlawful detainer action into an action for reimbursement of reasonable rental value.

Pursuant to Code of Civil Procedure section 1946, the new owners served the Ngs with notice of termination of tenancy effective January 31, 2004; they vacated that month.

The Ngs cross-complained against Aviel and his wife, as well as Abusharkh and Metwally, alleging causes of action for breach of contract, wrongful eviction, intentional infliction of emotional distress, conversion, termination of utility services, interference with use of the premises, specific performance and abuse of process. The Aviels moved for summary adjudication of the breach of contract, wrongful eviction and specific performance claims, arguing that these causes depended on a valid lease but the lease was extinguished by the subordination clause at the time of the trustee's sale. Opposing the motion, the Ngs maintained that the lease was not forfeited by the subordination clause because that clause applied only to mortgages, not deeds of trust. As well, the Ngs filed their own motion for summary judgment against Aviel on his action to recover reasonable rental value of the property, again asserting that the

subordination clause did not apply to a deed of trust. Ruling on these motions, the trial court concluded that the lease was subordinated to Aviel's deed of trust under the subordination clause, and thus was extinguished by the trustee's sale. Accordingly, the trial court granted summary adjudication in favor of the Aviels on the Ngs' causes of action for wrongful eviction and specific performance.[2]

The matter proceeded to a court trial on Aviel's claim for unpaid rent and utilities and the Ngs' claim against Abusharkh and Metwally for conversion of restaurant equipment, and to the jury on the Ngs' remaining causes of action. The court awarded the Aviels judgment in the amount of $125,763.70 as the reasonable rental value of the Ngs remaining in possession of the property from April 2002 through November 2003. The Ngs prevailed on their conversion claim, with an award of $60,960, plus costs and reasonable attorney fees. The jury found against the Ngs on their remaining cross-claims. This appeal by the Ngs followed.

## II. DISCUSSION

### A. *The Lease Was Forfeited*

■ The Ngs continue to insist on appeal that a mortgage is not a deed of trust and thus the subordination clause in their commercial lease, referencing only mortgages, did not embrace Aviel's deed of trust. Therefore, the lease was not forfeited upon the eventual trustee's sale under the power of sale in the deed of trust. We are not persuaded.

#### 1. *Governing Law*

■ Some basic terminology is in order. A "mortgage" is "a contract by which specific property . . . is hypothecated for the performance of an act, without the necessity of a change of possession." (Civ. Code, § 2920, subd. (a).) For purposes of the procedures governing exercise of a power of sale in a security device, the term " 'mortgage' also means any security device or instrument, other than a deed of trust, that confers a power of sale affecting real property or an estate for years therein, to be exercised after breach of the obligation so secured . . . ." (*Id.*, subd. (b).) A mortgage may confer a power of sale upon the mortgagee or any other person, to be exercised after breach of the obligation for which the mortgage is given as security. (*Id.*, § 2932.) ■ The forms of deeds of trust generally in use "provide that the trustor of the deed of trust 'grants, transfers and assigns' the

---

[2] The court denied summary adjudication on the breach of contract cause of action, ruling that the Aviels failed to comply with certain statutory requirements.

property to the trustee, who holds the title as security for the performance of the obligation." (4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10:2, p. 15.) There are three parties to a deed of trust: (1) the trustor, who owns the property that is conveyed to (2) the trustee[3] as security for the obligation owed to (3) the beneficiary. (4 Miller & Starr, *supra*, § 10.3, p. 20.)

■ Many years ago, our Supreme Court held that the function and purpose of deeds of trust and mortgages are identical, and "except for the passage of title for the purpose of the trust, [deeds of trust] are practically and substantially only mortgages with a power of sale . . . ." (*Bank of Italy etc. Assn. v. Bentley* (1933) 217 Cal. 644, 657 [20 P.2d 940] (*Bank of Italy*).) Both are subject to (1) the same procedures and limitations on judicial and nonjudicial foreclosure; (2) the same redemption provisions prior to and after the foreclosure sale; and (3) the same antideficiency limitations. (4 Miller & Starr, Cal. Real Estate, *supra*, § 10:1, pp. 13–14.)

■ Although technically under a deed of trust legal title passes to the trustee, this conveyance of title is " 'solely for the purpose of security, leaving in the trustor . . . a legal estate in the property, as against all persons except the trustees and those lawfully claiming under them. [Citations.]' " (*Bank of Italy*, *supra*, 217 Cal. at p. 656.) As summed up more recently by our state's high court, "In practical effect, if not in legal parlance, a deed of trust is a lien on the property. [¶] . . . The deed of trust conveys 'title' to the trustee 'only so far as may be necessary to the execution of the trust.' [Citation.]" (*Monterey S.P. Partnership v. W. L. Bangham, Inc.* (1989) 49 Cal.3d 454, 460 [261 Cal.Rptr. 587, 777 P.2d 623].)

A lease otherwise senior to a deed of trust may be subordinated to that instrument by way of a subordination agreement. (*Dover Mobile Estates v. Fiber Form Products, Inc.* (1990) 220 Cal.App.3d 1494, 1498 [270 Cal.Rptr. 183] (*Dover*).) A subordination agreement is a contract by which a party holding a senior lien or other real property interest agrees to lower its priority in relation to that of another holding an interest in the same property. (*Miscione v. Barton Development Co.* (1997) 52 Cal.App.4th 1320, 1327 [61 Cal.Rptr.2d 280].) The foreclosure of a senior encumbrance will wipe out all subordinate liens, including leases. (*Id.* at p. 1326.) Thus, if the sale of the landlord's interest is forced by one having a superior title to that of the tenant, the tenant's interest will be defeated by the sale under the deed of trust. (*Dover, supra*, 220 Cal.App.3d at p. 1499.)

---

[3] The trustee of a deed of trust serves merely as a common agent of both parties. (*Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73 Cal.App.4th 668, 677 [86 Cal.Rptr.2d 490].)

## 2. *The Ngs Attempt to Draw Distinctions That Are Meaningless*

Here there was a subordination clause within the lease rendering the lease subordinate to "mortgages which may now or hereafter affect" the real property. The Ngs, however, emphasize distinctions between mortgages and deeds of trust, which are either illusory or unimportant. For example, they underscore that a deed of trust conveys legal title, and, citing *Anglo-California T. Co. v. Oakland Rys.* (1924) 193 Cal. 451, 452 [225 P. 452], urge that "the interest in the property [vests] as an estate and not as a lien." *Anglo-California T. Co.* predates *Bank of Italy* and is predicated on the obsolete lien versus title theory historically relied on to differentiate the two security instruments. That theory has been discredited by the more contemporary jurisprudence discussed above, which functionally equates the two instruments and recognizes that a deed of trust, for all practical purposes, is a lien on the property.

The Ngs also stress that a "straight mortgage" requires a judicial foreclosure, as compared with a deed of trust which also allows a trustee sale in the event of a default. In a judicial action, they argue, a tenant would be named as an interested party and have the opportunity to defend its leasehold interest during the proceeding. They are adamant that their bargain with the owner of the building "was limited to subordinating to mortgages." But of course the subordination clause here is not limited to a "straight mortgage" and it does not exclude a mortgage with a power of sale, which is the functional equivalent of a deed of trust. Moreover, only tenants with a recorded interest in the property need be made a party to a judicial foreclosure action. (Code Civ. Proc., § 726, subd. (c).) The Ngs have not shown that they recorded their leasehold interest.

The Ngs further contend that the limitation period for enforcing a debt secured by a deed of trust is longer than the period applicable to a mortgage. From this they suggest that the subordination clause could not be construed to apply to deeds of trust. While there is a difference between the two limitation periods,[4] case law has nonetheless consistently held that the two security

---

[4] The running of the statute of limitations on an obligation underlying a mortgage or deed of trust bars judicial foreclosure as well as an action to enforce the obligation. (See *Carson Redevelopment Agency v. Adam* (1982) 136 Cal.App.3d 608, 611 [186 Cal.Rptr. 615]; see also *Miller v. Provost* (1994) 26 Cal.App.4th 1703, 1707 [33 Cal.Rptr.2d 288]; 1 Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2007) § 3.18, p. 166.) However, historically the rule has been that time does not outlaw the trustee's power of sale under a deed of trust, although the same power in a mortgage would be subject to the statute of limitations on the underlying debt. (See *Travelli v. Bowman* (1907) 150 Cal. 587, 590 [89 P. 347]; *Sipe v. McKenna* (1948) 88 Cal.App.2d 1001, 1005–1006 [200 P.2d 61]; Civ. Code, § 2911; 1 Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra*, § 1.31, p. 27.) This is so because the power of sale in the hands of a mortgagee is a mere incident of the mortgage lien and is

instruments serve identical functions and purposes and the same rules should apply to both. (*Bank of Italy, supra,* 217 Cal. at p. 655.) And in any event, the Ngs have failed to show how this minor difference is of any consequence. They were not beneficiaries of the deed of trust, nor were they mortgagees of any mortgage on the property.

Additionally, the Ngs attempt to establish that a deed of trust differs from a mortgage because both real and personal property can be mortgaged, but a deed of trust conveys only an interest in real property. This is significant, they urge, because although the lien of a deed of trust can be imposed on a leasehold estate for years, which is an interest in real property, it cannot be imposed on lesser tenancies, such as a month-to-month tenancy. The implication the Ngs are trying to draw, we gather, is that one could mortgage a month-to-month tenancy but could not subject the same to a deed of trust. While possibly within a hypothetical realm of reality, this distinction, in the real world, is meaningless.

Further, we wonder on what basis the Ngs declare that a master tenant wishing to assist tenants who need financing to build out the interior of their leased premises could "more easily" obtain a mortgage than a deed of trust "without affecting the landlord's title or interest in the real property." We are not sure what the Ngs are driving at, but neither a deed of trust nor a mortgage on the master tenant's leasehold interest would encumber the landlord's title because only the trustor's or mortgagor's own property interest can be encumbered. (See *Hoppe v. Fountain* (1894) 104 Cal. 94, 101 [37 P. 894]; *Weisberg v. Ashcraft* (1961) 194 Cal.App.2d 225, 231 [14 Cal.Rptr. 817].) Moreover, we are not aware of any law or facts subject to judicial notice which support the Ngs' conjecture that a master tenant could more easily obtain a mortgage. (See, e.g., *Indusco Management Corp. v. Robertson* (1974) 40 Cal.App.3d 456, 458 [114 Cal.Rptr. 47] [action involved deed of trust on leasehold estate in medical building].)

---

lost with the running of the statute of limitations on the underlying debt. (Civ. Code, § 2911, subd. 1 [lien is extinguished by passage of time within which action may be brought on principal obligation]; *Faxon v. All Persons* (1913) 166 Cal. 707, 715–716 [137 P. 919]; see *Flack v. Boland* (1938) 11 Cal.2d 103, 106 [77 P.2d 1090].) The rule that the power of sale in a deed of trust is never outlawed has been tempered by the Marketable Record Title Act (Civ. Code, § 880.020 et seq.), which operates like a statute of repose by imposing outside limits on the enforceability of all real property security instruments (*id.*, § 882.020). Subject to provisions extending the expiration date, the duration of the power of sale in a deed of trust is now limited to (1) 10 years from the final maturity date or last date set for payment, if such date is ascertainable from the recorded evidence of indebtedness, or (2) 60 years if such date is not so ascertainable or there is no final maturity date or last date fixed for payment. (*Id.*, § 882.020, subd. (a)(1), (2).)

### 3. Contract Interpretation

■ The Ngs urge that the subordination clause should not be interpreted to include deeds of trust because this interpretation leads to forfeiture, citing Civil Code section 1442. That statute states: "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." Section 1442, by its terms, is premised on a condition which the promisor must perform or not perform on pain of forfeiture in favor of the promisee. The statute requires a clear statement of the required performance or nonperformance so that the promisor can conform his or her behavior and avoid a forfeiture. Here, the subordination clause is triggered by events entirely independent of any performance by the Ngs. Civil Code section 1442 does not apply.

■ In any event, we give the terms of the subordination clause their meaning as "understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." (Civ. Code, § 1644.) For years, California appellate courts have held that a deed of trust is functionally equivalent to a mortgage. The Ngs would have us understand the term "mortgage" to carry a more technical or special meaning that defines a mortgage as so distinct from a deed of trust as to render it outside the purview of the subordination clause. But there is no evidence that the commercial leasing community understands the term "mortgage" in this limited fashion.

■ In *Bank of Italy*, the plaintiff attempted to sue on a promissory note secured by a deed of trust without first exhausting the security. The plaintiff argued that Code of Civil Procedure section 726[5] only referred to mortgages, and a deed of trust was not a mortgage. (*Bank of Italy, supra*, 217 Cal. at p. 653.) Rejecting the plaintiff's attempt to exclude deeds of trust from the purview of Code of Civil Procedure section 726, the court stated: "Fundamentally, it cannot be doubted that in both situations the security for an indebtedness is the important and essential thing in the whole transaction. The economic function of the two instruments would seem to be identical. Where there is one and the same object to be accomplished, important rights and duties of the parties should not be made to depend on the more or less accidental form of the security." (*Bank of Italy, supra*, at pp. 657–658.) We see no reason to diverge from this reasoning. The purpose of the subordination clause is to rearrange lien priorities so that the priority of a future

---

[5] This statute provides that there shall be but one action for recovery of any debt or enforcement of any right secured by a mortgage on real property. (Code Civ. Proc., § 726, subd. (a).)

lender's lien will overtake that of a lessee whose interest in the property otherwise is first in time and thus ahead of the deed of trust. A future lender's ability to rely on a subordination clause should not depend on whether the security instrument is called a mortgage or a deed of trust.

### B. *The Court Properly Awarded Damages for Lost Rent*

The trial court determined that the proper basis for determining rent and utility costs for the Ngs' postforeclosure tenancy was the reasonable value of their use of the premises, rather than the preexisting lease terms. The Ngs contend that rent and utilities should be determined with reference to the prior lease.

A tenant under a subordinated lease who remains in possession after the foreclosure sale does so as a holdover tenant (tenant at sufferance). (*Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman* (1998) 65 Cal.App.4th 1469, 1478 [77 Cal.Rptr.2d 479] (*Principal Mutual*).) There is no contractual relationship between a holdover tenant and the landlord; the tenant has but " 'naked possession.' " (*Stephens v. Perry* (1982) 134 Cal.App.3d 748, 757, fn. 4 [184 Cal.Rptr. 701]; see *McDermott v. Burke* (1860) 16 Cal. 580, 589.) However, contrary to the Ngs' assertion that Aviel's only remedy was to sue for ejectment, the holdover tenant is liable for the value of the use and occupation of the premise during the time of holding over. (*Stephens v. Perry, supra*, at p. 757, fn. 4; *Colyear v. Tobriner* (1936) 7 Cal.2d 735, 742 [62 P.2d 741].) In the case of a foreclosed subordinate lessee, absent a new consensual agreement, the purchaser is entitled to recover the fair rental value of the premises from the date of sale until the tenant vacates. (5 Miller & Starr, Cal. Real Estate, *supra*, § 11:95, p. 243.)

However, if the purchaser of foreclosed property accepts rent from the former tenant, a month-to-month tenancy is created under the terms of the terminated lease. (Civ. Code, § 1945 [where lessee remains in possession after expiration of lease and lessor accepts rent, parties *are presumed* to have renewed lease on same terms, not exceeding one month where rent paid monthly]; *Principal Mutual, supra*, 65 Cal.App.4th at p. 1478; see *Renner v. Huntington etc. Oil & Gas Co.* (1952) 39 Cal.2d 93, 102 [244 P.2d 895].) The Civil Code section 1945 presumption is rebuttable. (*Miller v. Stults* (1956) 143 Cal.App.2d 592, 598 [300 P.2d 312].) For example, the presumption will be rebutted with substantial evidence that the parties began operating under a new agreement. (*Id.* at pp. 599–600.)

Here the trial court found that for 20 months Aviel and the Ngs were consumed in extended lease negotiations but never signed a new lease. During these negotiations, "the Ngs remained in an undefined, uneasy tenancy and deducted utility payments from the rent. Mr. Aviel also paid some of the utilities, *all the while taking the position that the Ngs should pay for what utilities they used.* At first, Mr. Aviel accepted the Ngs' rent payments; but after the first five months, and on advice of an attorney, he returned the rent checks." (Italics added.)

The extinguished lease provided that the lessor would pay for electricity, water and garbage, while the lessee was to pay and maintain an individual gas account. At the court trial the parties stipulated that the Ngs paid five months' rent "under [the] old lease." The "net amount" of rent paid during that period varied, presumably because, as the trial court found, the Ngs deducted utility payments from their payments. The parties further stipulated that Aviel "still claims additional utilities and sewer tax" for the five-month period. Based on these stipulations and the court's findings, it is apparent that Aviel did not consent to the Ngs' occupancy under the terms of the extinguished lease. This is so because all the time he insisted, contrary to the lease, that postforeclosure the Ngs should pay for *all* the utilities they used. The Ngs have not provided us with a transcript of the court trial and have pointed to nothing in the record to refute this characterization or the trial court's findings. Therefore, the trial court properly proceeded to award postforeclosure rent and utilities on a reasonable market value basis.

## C. *Jury Verdict*

Finally, the Ngs request "that the jury verdict [on their abuse of process and breach of the covenant of quiet enjoyment causes of action] be reversed with a new trial ordered on all issues." They point out that the jury was instructed that the lease had been "legally forfeited" and Aviel had the right to seek possession of the premises. In their opening brief, the Ngs present no argument or explanation as to why the jury verdict must be reversed. Therefore, we treat this issue as waived for want of cognizable legal argument. (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [27 Cal.Rptr.3d 583].) They attempt, in their reply brief, to develop the argument, but it is too late. We disregard issues not properly addressed in the appellant's opening brief. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4 [27 Cal.Rptr.3d 648, 110 P.3d 903].) In any event, their argument has no merit because it is based on the assumption that the lease was not forfeited, which it was.

## III.  DISPOSITION

The judgment is affirmed in its entirety.

Sepulveda, J., and Rivera, J., concurred.