Filed 2/10/25 (unmodified opinion attached)

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LAURA READ BACA,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>YONGHE KUANG,<br><br>    Defendant and Appellant. | A171071<br><br>(Alameda County<br> Super. Ct. No. 23CV027202)<br><br>**ORDER MODIFYING OPINION AND ORDER DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**

The opinion filed January 13, 2025 is modified as follows:

(1)     After the last full paragraph on page 11, add the following sentence to this paragraph:

> And by accepting this rent, Baca impliedly consented to a holdover tenancy by Kuang. (*Hart*, *supra*, 175 Cal.App. 3d at p. 95 [section 1945 "provides the landlord's consent to the holding over is implied if he accepts rent from the tenant after the expiration of the lease"].)

(2)     In the first paragraph on page 16, delete the last three sentences, which read:

> Baca's unlawful detainer complaint, however, requested holdover damages based on the fair rental value of the premises starting on February 1, 2023. And Baca did, in fact, ask for and recover holdover damages from that date. This means that she could not have intended

to use any of Kuang's payments after February 1, 2023 as a setoff for holdover damages.

(3)     In the first sentence in the second paragraph on page 16, replace "In any event," with "But,"

(4)     Combine the two paragraphs on page 16 so those two paragraphs now become one paragraph.

(5)     In the first full paragraph on page 17, delete the last sentence, which reads:

In any case, the filing of the unlawful detainer action does not change the fact that Baca could only have accepted Kuang's monthly rent payments pursuant to paragraph 26, which established a month-to-month tenancy.  (See, ante, at pp. 16–17 & fn. 6.)

(6)     After the first full paragraph on page 17, add the following new paragraph:

In any case, Baca's filing and continued pursuit of the unlawful detainer action does not change the fact that, as of February 6, 2023, she could only have accepted Kuang's monthly rent payments pursuant to paragraph 26 of the lease agreement, which established a valid month-to-month tenancy.  (See, ante, at pp. 16–17 & fn. 6.)  "The unlawful detainer statutes were enacted to provide an adequate expeditious and summary procedure for regaining possession of real property *wrongfully withheld* by a tenant." (*De La Vara v. Municipal Court* (1979) 98 Cal.App.3d 638, 640, italics added.)  Because a valid holdover tenancy was created pursuant to paragraph 26 when Baca accepted Kuang's rent payments beginning on February 6, 2023, Kuang was not in wrongful possession of the premises under the terms of the lease.  Baca therefore had no basis to initiate an unlawful detainer action against him in the first place.  As a result, Baca's improperly filed unlawful detainer action cannot rebut the presumption under section 1945.

[This order does not effect a change in the judgment.]

2

Respondent Laura Read Baca's January 30, 2025 petition for rehearing is denied.


CHOU, J.


We concur.


JACKSON, P. J.
BURNS, J.


*Baca v. Kuang* (A171071)

Trial Court:          Alameda County Superior Court

Trial Judge:          Hon. Victoria Kolakowski, Hon. Keith Kern Fong, Hon.
                      Sarah Sandford-Smith

Counsel:              Hoge Fenton Jones & Appel, Steven J. Kahn, Giuliana Rose
                      Ferrante and Dennis Scott Zell for Plaintiff and
                      Respondent

                      Kaw Law, Kavin A. Williams for Defendant and Appellant

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

LAURA READ BACA,

     Plaintiff and Respondent,

v.

YONGHE KUANG,

     Defendant and Appellant.

A171071

(Alameda County
Super. Ct. Nos. 23CV027202,
23AP054588 & 23AP060272)

Defendant Yonghe Kuang appeals from the trial court's judgment and award of attorney fees against him in an unlawful detainer action. Plaintiff and respondent Laura Read Baca doing business as Baca Properties was Kuang's commercial landlord and issued a 30-day notice to terminate his tenancy. Several days after the notice expired, Kuang tendered a rent check to Baca, which she deposited that same day and never refunded. The next day, Baca filed an unlawful detainer action against Kuang, arguing that he was unlawfully holding over. While the action was pending, Kuang tendered payment of rent and common area maintenance (CAM) charges to Baca pursuant to invoices sent by her management company for three additional months, which she deposited and never refunded. The trial court held that despite Baca's acceptance of these payments, she did not consent to Kuang's

---

     * Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts B and E of the Discussion.

1

continued possession based on the terms of their lease.  In reaching this holding, the court concluded that Civil Code section 1945—which establishes a presumption of renewal whenever a landlord accepts rent from a tenant after the expiration of a lease—did not apply.[1]  Applying de novo review, we find that section 1945 does apply because Baca accepted rent from Kuang multiple times after his lease had expired.  We further find that, in light of this presumption, Baca consented to a month-to-month tenancy based on the undisputed facts and the terms of the lease.  We therefore reverse.

## I.  BACKGROUND

In January 2014, Baca's predecessor and Kuang entered into a one-year commercial lease agreement (lease or agreement) for premises located in Fremont, California (premises).  Baca's company prepared the agreement— which required that Kuang pay a monthly rent of $1,805 and a monthly CAM charge of $145.

The agreement also contained several provisions addressing what could happen if Kuang remained in possession of the premises after the lease terminated.  Under paragraph 26, titled "Holding Over," "If Lessee, with Lessor's consent, remains in possession of the Premises or any part thereof after the expiration of the term hereof, such occupancy shall be a tenancy from month to month upon all the provisions of this Lease pertaining to the obligations of Lessee, but all options and rights of first refusal, if any granted under the terms of this Lease shall be deemed terminated and be of no further effect during said month-to-month tenancy and the total rent shall be two hundred percent (200%) of the last month's total rent."  (Boldface omitted.)  Meanwhile, paragraph 42.3 stated in pertinent part that "All

_____

[1] All further statutory references are to the Civil Code unless otherwise specified.

obligations of Lessee under this Lease not fully performed as of the expiration or earlier termination of the Term shall survive the expiration or earlier termination of the Term. In the event that Lessee's failure to perform prevents Lessor from releasing the Premises, Lessee shall continue to pay rent pursuant to the provisions of Article 4 or Article 26, whichever is applicable, until such performance is complete."[2] Finally paragraph 24, a no-waiver provision, stated in pertinent part that "[t]he acceptance of rent hereunder by Lessor shall not be a waiver of any preceding breach by Lessee of any provision hereof, other than the failure of Lessee to pay the particular rent so accepted, regardless of Lessor's knowledge of such preceding breach at the time of acceptance of such rent."

The parties subsequently signed several amendments to the lease that extended its term and increased Kuang's monthly rent. In January 2019, the parties agreed to convert the lease term to a month-to-month tenancy. In March 2022, Baca issued a 30-day notice to terminate Kuang's tenancy. After Kuang expressed his desire to continue leasing the premises, the parties entered into an amendment in June 2022 that increased Kuang's monthly rent from $2,775 to $3,850, plus $150.00 in CAM charges, for a total of $4,000 per month.

On December 28, 2022, Baca issued another 30-day notice to terminate Kuang's tenancy. The notice stated that January 31, 2023 was the termination date. As of January 31, 2023, Kuang did not owe Baca any back rent. Nor was there any evidence that Kuang had breached any lease provisions as of that date.

On February 6, 2023, Baca received and deposited a check from Kuang for the February 2023 rent and CAM charges. The next day, she filed an

[2] Article or paragraph 4 governs Kuang's monthly payment of rent.

3

unlawful detainer action against Kuang.  While that action was pending, Baca continued to invoice Kuang for rent and CAM charges for the months of March, April, and May 2023.  Kuang paid the invoiced amount for each of these months.  Baca deposited all of Kuang's payments after January 31, 2023 and never returned them.

At the court trial, Baca testified that she did not personally issue the invoices but admitted that "Baca Properties" did, either through "her software system and/or someone else managing the software system."  She further testified that "it was her understanding of the law that she could accept rent payments after the expiration of [Kuang's] 30[-]day notice and still evict [him]."

Baca also acknowledged that on April 17, 2023, Baca Properties sent Kuang an email requesting that he provide a current copy of his certificate of commercial liability insurance "naming [Baca] and Baca Properties as additional insured[s]" and stating that the failure to do so would be a breach of his lease and constitute "grounds for eviction."  (Boldface, italics, and underlining omitted.)  Kuang responded the next day by emailing a copy of his liability insurance.

Although Baca and her property manager testified at trial, Kuang did not.  Instead, his attorney argued that, by accepting Kuang's multiple payments of rent and CAM charges after the 30-day notice had expired on February 1, 2023, Baca renewed the lease pursuant to section 1945 or paragraph 26 of the agreement (holdover).  Baca countered that section 1945 did not apply because it was superseded by the terms of the agreement.  Specifically, Baca relied on paragraphs 24 (no waiver) and 42.3 (obligations surviving after lease expiration) of the agreement and argued that she "expressly reserved her rights to enforce a 30-day notice regardless of her

4

actions" like accepting rent.

The trial court agreed with Baca and awarded possession of the premises to her. In its order and statement of decision (statement of decision), the court concluded that Baca "never consented to [Kuang's] continued possession," and that the " 'rent' payments were required under the lease in the event of a holdover after termination of the tenancy." As for any terms that may survive the lease's termination, the court noted that "some terms may be negotiated in a lease, as in any contract, that survive beyond the period of the occupancy to ensure that the right of both parties are protected after the end of the tenancy."

On November 21, 2023, Baca filed a Notice of Entry of Judgment or Order, attaching the statement of decision. On December 4, 2023, Kuang filed a notice of appeal, identifying a judgment dated November 21, 2023 as the judgment appealed from.

On December 13, 2023, the trial court entered judgment in favor of Baca for possession of the premises and awarded her $79,135.23. This amount included, among other things, $51,560 in attorney fees and $24,000 in holdover damages. The judgment also noted that it incorporated the statement of decision. Kuang filed a second notice of appeal, appealing from the award of attorney fees.

## II. DISCUSSION

A. Standard of Review

When a "statement of decision contains both findings of fact and conclusions of law," "[w]e review the trial court's findings of fact to determine whether they are supported by substantial evidence. [Citation.] To the extent the . . . court drew conclusions of law based upon its findings of fact, we review those conclusions of law de novo." (*Westfour Corp. v.*

5

*California First Bank* (1992) 3 Cal.App.4th 1554, 1558.)

"We generally apply an independent, or de novo, standard of review to conclusions of law regarding interpretation of [a lease]. 'The precise meaning of any contract, including a lease, depends upon the parties' expressed intent, using an objective standard. [Citations.] When there is ambiguity in the contract language, extrinsic evidence may be considered to ascertain a meaning to which the instrument's language is reasonably susceptible.' . . . '[W]here . . . the extrinsic evidence is not in conflict, construction of the agreement is a question of law for our independent review.' " (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266–1267.)

Baca argues that Kuang forfeited all of his arguments because his opening brief did not specify which standard of review applied to which arguments, but instead contained an "omnibus section" that generally discussed prejudicial error. We disagree. It is true that " '[a]rguments should be tailored according to the applicable standard of appellate review' " and that "[f]ailure to acknowledge the proper scope of review is a concession of lack of merit." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.) But Kuang's brief specified that issues of contract interpretation are reviewed de novo while factual disputes are reviewed for substantial evidence. His brief then cites legal authority for each argument raised. Thus, we see no grounds for forfeiture.

B. <u>Jurisdiction and Fair Presentation</u>

Baca contends that we lack jurisdiction to decide all issues except for the attorney fee award because Kuang's first notice of appeal identified a judgment dated "November 21, 2023" and Baca only filed her Notice of Entry of Judgment or Order, attaching the statement of decision, on that date. We

6

agree that "a statement of decision is not treated as appealable when a formal order or judgment does follow," and a judgment did follow here. (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.) But that judgment incorporated and attached a copy of the statement of decision. In the interests of justice, we construe Kuang's notice of appeal from the statement of decision as a premature notice of appeal from the judgment entered by the trial court on December 13, 2023. (See Cal. Rules of Court, rule 8.104, subd. (d)(2); *Conservatorship of Edde* (2009) 173 Cal.App.4th 883, 889.)

Baca makes two additional arguments unrelated to the merits of the case. First, she argues that Kuang did not fairly summarize the facts in the record as required by California Rules of Court, rule 8.204(a)(2)(C). According to Baca, Kuang improperly " 'skewed' " his summary in his favor because he failed to mention that the trial court found that she inadvertently sent "computerized" rent invoices to Kuang or that she "never consented" to Kuang's continued possession. We disagree. Although Kuang did omit some details, he did fairly summarize the court's statement of decision, which found that "[Baca's] subjective intent was not to renew the Lease" and that she "did not consent to extend the tenancy because the unlawful detainer complaint was filed shortly after the expiration of the [30-day notice]." Kuang also fairly summarized Baca's position and testimony at trial—i.e., that "she believed she was entitled by law to accept rent after the lease expiration without renewing the tenancy." We therefore find that Kuang satisfied the fair presentation requirement. In any case and as we discuss below, Baca's subjective intent is irrelevant to our analysis.

Second, Baca argues that because the trial court's judgment is presumed correct, the lack of a reporter's transcript prevents us from

7

resolving this appeal. We again disagree. The court issued a statement of decision that summarized the undisputed facts and the parties' arguments. Kuang also recited the relevant facts, including the testimony provided by the witnesses at trial, in his proposed statement on appeal, and the court certified that his statement was "an accurate summary of the evidence and testimony that is relevant to the issues" on appeal.[3] Baca did not challenge the certification below and does not argue on appeal that the facts certified by the court are inaccurate or incomplete. Given this, we do not find the lack of a reporter's transcript fatal to Kuang's appeal.

  C. <u>The Section 1945 Presumption</u>

  Turning to the merits, we review the judgment de novo because the relevant facts are undisputed (as the trial court observed in its statement of decision) and because the appeal requires us to interpret certain lease terms. As a threshold matter, Kuang contends that because Baca accepted rent after the lease terminated, there is a presumption that she consented to its renewal under section 1945. Baca counters that substantial evidence supports the court's implicit conclusion that section 1945 did not come into play here because she did not intend to renew the lease. We agree with Kuang.

  Under section 1945, "If a lessee of real property remains in possession thereof after the expiration of the hiring, and the lessor accepts rent from him, the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one month when the rent is payable monthly, nor in any case one year." This presumption is rebuttable. (*Aviel v. Ng.* (2008) 161 Cal.App.4th 809, 820.)

  Baca initially contends that section 1945 does not apply because she

---

[3] Baca omitted this fact in her respondent's brief.

issued a 30-day notice to terminate Kuang's tenancy. Baca, however, cites no legal authority to support this contention and, as Kuang points out, her contention was rejected by *Superior Strut & Hanger Co. v. Port of Oakland* (1977) 72 Cal.App.3d 987. In that case, a commercial landlord issued a 30-day notice to terminate tenancy. (*Id.* at p. 993.) Although the tenant did not vacate at the end of the notice period, the landlord "took no further action, except to urge that [the tenant] move at the earliest possible date." (*Ibid.*) The tenant thereafter "executed a promissory note for $14,437.15 stated to be the damages suffered by [the landlord] as a result of [the tenant's] delay in vacating the premises." (*Ibid.*) On appeal, another division of this court concluded that section 1945 applied after the 30-day notice expired. (*Id.* at p. 997.) Of significance, the division held that "[t]he only reasonable inference that can be drawn from the evidence presented is that [the landlord] acquiesced to continued occupancy by [the tenant] and that such occupancy was with [the landlord's] consent. Furthermore, even had [the landlord] not consented to continuation of . . . tenancy, its mere 30-day notice of cancellation could *not* have rendered [the tenant's] continued possession 'unlawful.' " (*Ibid.*, italics added.)

Turning to the applicability of section 1945 under the undisputed facts in this case, we find that Baca "accept[ed]" rent from Kuang, giving rise to a statutory presumption that she renewed the lease. (§ 1945.) Baca received and deposited Kuang's payment of rent and CAM charges for the month of February on February 6, 2023—without qualification or objection. Although Baca did file the unlawful detainer action the next day, she continued to invoice Kuang for rent and CAM charges for three additional months. And when Kuang paid those invoices, Baca again deposited his payments without objection or qualification. More notably, Baca *never* returned or offered to

9

return any of Kuang's payments. Under these undisputed facts, there is only one reasonable inference: that Baca accepted rent from Kuang for purposes of section 1945.

That Baca inadvertently sent multiple invoices to Kuang asking him to pay monthly rent and CAM charges does not suggest otherwise. Although she may have sent those invoices inadvertently, her decision to deposit and retain Kuang's payments pursuant to those invoices was not inadvertent. Indeed, Baca testified that she intentionally "accept[ed] rent payments after the expiration of [Kuang's] 30[-]day notice" based on "her understanding of the law . . . ."

Likewise, Baca's argument that she did not intend to "consent to a holdover tenancy" by cashing Kuang's checks does not help her here. Under the plain language of section 1945, the issue is whether Baca "accept[ed]" Kuang's payments as "rent"—and not whether she subjectively intended to create a holdover tenancy. In this case, Baca testified at trial that: (1) Kuang owed no "back rent" as of the date the lease terminated; (2) her company invoiced Kuang for payments of rent and CAM charges after the termination of the lease like it had done during the lease term; (3) she deposited at least four of Kuang's monthly payments of rent and CAM charges after the termination of the lease; and (4) she never returned those payments to Kuang. Based on these undisputed admissions, the payments made by Kuang could only be construed as rent for the premises, and Baca's deposit and retention of those payments can only be construed as her acceptance of that rent for purposes of section 1945.

*The City v. Hart* (1985) 175 Cal.App.3d 92 (*Hart*) does not support a contrary conclusion. In *Hart*, the Court of Appeal concluded that section 1945 did not apply because "The City [(landlord)] accepted rent from Hart

10

[(tenant)] *before* the expiration of the lease term." (*Id*. at p. 95, italics added.) Accordingly, "this cannot be construed as implied consent to a holding over that had not yet occurred." (*Ibid*.) For this reason alone, *Hart* is inapplicable here.

Baca acknowledges that, unlike the landlord in *Hart*, she accepted rent from Kuang *after* the lease terminated and during the holdover period. But she counters that the Court of Appeal in *Hart* also concluded that the City's retention of rent *after* the expiration of the lease did not "signify its consent to Hart's continued possession." (*Hart, supra,* 175 Cal.App.3d at p. 95) She argues that the same should be true here. But the Court of Appeal in *Hart* only held that the City's retention of the tenant's payment did not support its renewal of the lease under section 1945 because "retrospective annual adjustments remained to be made and the exact amounts were unknown." (*Ibid*.) In other words, the City did not accept that payment as "rent" as understood in section 1945. By contrast, Baca does not dispute that Kuang owed *nothing more* at the time his lease terminated on January 31, 2023. Yet, Baca continued to invoice Kuang for rent and CAM charges for several months after the termination of the lease and retained all of Kuang's payments even after she purportedly realized that the invoices should never have been issued. Under these undisputed facts, Baca's collection and retention of Kuang's payments can only be construed as her acceptance of rent under section 1945.

Baca's reliance on *Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, is also misplaced. There, the parties entered into a settlement agreement that required the tenant to vacate her apartment by a specified date. (*Id*. at p. 738.) When the tenant did not do so, the landlord sued for breach of contract. (*Id*. at p. 739.) While the lawsuit was pending, the tenant

11

continued to submit monthly rent checks to the landlord. "All these checks were ultimately returned to her un-cashed, except for a single check that was mistakenly deposited." (*Id.* at p. 738.) The landlord, however, "issued a refund check for that payment and sent it to [the tenant]." (*Ibid.*) Based on these facts, another division of this court concluded that the landlord "never accepted [the tenant's] post-March 2008 rent checks" and that "only one [rent] check was cashed and the evidence suggests that was inadvertent." (*Id.* at p. 741.) Therefore, section 1945 did not apply.

The facts here are markedly different than those in *Kaufman*. Baca deposited *four* of Kuang's monthly payments for rent and CAM charges after the lease terminated and did not refund any payments made by Kuang or inform him that his payments were being retained as holdover damages. More significantly, Baca *admitted* that she accepted those payments because she believed that she could do so without affecting her right to evict Kuang. She therefore accepted rent for purposes of section 1945, creating a presumption that she renewed the lease.

D. Rebuttal of the Section 1945 Presumption

Although there is a presumption that Baca consented to the renewal of the lease on a month-to-month basis, that presumption is rebuttable. (§ 1945.) Kuang contends that there are no facts here to rebut that presumption. He therefore argues that his lease was renewed under the holdover provision found in paragraph 26, which provides that, if Kuang, with Baca's consent, remains in possession of the premises after the lease's expiration, "such occupancy shall be a tenancy from month to month upon all the provisions of this Lease . . . ."[4] Baca counters that the lease's no-

---

[4] The holdover provision also states that "the total rent shall be two hundred percent (200%) of the last month's total rent." Although Kuang did

waiver provision rebuts the presumption and precludes the application of the holdover provision. She further contends that the trial court correctly concluded that she accepted Kuang's payments pursuant to paragraph 42.3 of the lease, rather than the holdover provision found in paragraph 26. Finally, she contends that her filing of the unlawful detainer action and her subjective lack of intent to renew the lease are sufficient to rebut the presumption. We disagree.

1. *No-Waiver Provision*

First, Baca's reliance on the no-waiver provision of the lease is misplaced. That provision states in pertinent part that "[t]he acceptance of rent hereunder by Lessor shall not be a waiver of any *preceding breach* by Lessee of any provision hereof, other than the failure of Lessee to pay the particular rent so accepted . . . ." (Italics added.) Nowhere in her brief, however, does Baca specify *what* lease provision Kuang breached *before* she accepted his rent payments. By failing to do so, Baca arguably forfeited her argument that the no-waiver provision is applicable here. (*Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 653 ["An appellant abandons an issue by failing to raise it in the opening brief"].)

Even if Baca did not forfeit the argument, there is no "preceding

___

not pay "(200%) of the last month's total rent" after the termination of the lease for the months of February through May 2023, it is not clear whether the rent requirement found in paragraph 26 supersedes section 1945 under paragraph 40 of the lease agreement. Fortunately, we do not need to resolve this conflict in order to decide this appeal. The amount of rent required by the holdover provision does not defeat the presumption that Baca consented to a holdover tenancy by accepting Kuang's rent and CAM payments before and after she filed the unlawful detainer action. Moreover, Baca never issued a notice to pay rent or quit to him and never even suggested that Kuang should have paid more. Instead, she accepted Kuang's payments without qualification or objection.

13

breach" of the lease that would have triggered the no-waiver provision at the time she accepted Kuang's rent payments. Baca admitted that Kuang owed no back rent as of January 31, 2023—the date the lease terminated under the 30-day notice. She also did not dispute that Kuang's payments after that date were sufficient to cover all monthly rent and CAM charges. In any event, the no-waiver provision makes clear that Baca's acceptance of Kuang's rent payments *did* waive his failure "to pay the particular rent so accepted."

As a result, under the undisputed facts, the only lease provision that Kuang could have breached at the time his lease terminated is paragraph 42.1, which states: "At the end of the Term or any renewal of the Term or other sooner termination of this Lease, Lessee will peaceably deliver up to Lessor possession of the Premises . . . ." But paragraph 13.1 establishes that Kuang had yet to commit any breach of the lease agreement when he failed to deliver up possession of the premises as required by paragraph 42.1 at the time Baca accepted his rent payments from February through May 2023. As relevant here, paragraph 13.1 establishes that "a material default and breach" of the lease only occurs when the Lessee fails "to observe or perform any of the covenants, conditions or provisions of this Lease to be observed or performed by Lessee . . . where *such failure shall continue for a period of ten (10) days*."[5] (Italics added.) In other words, no violation of a lease provision,

---

[5] Paragraph 13.1 identifies four other "material" breaches: (1) the tenant's abandonment of the premises; (2) the tenant's failure to pay rent; (3) any assignment made by the tenant for the benefit of creditors; and (4) the tenant's submission of a false financial statement. Baca did not allege that Kuang committed any of these other breaches in her unlawful detainer complaint or 30-day notice, and there is no evidence in the record that he had done so at the time she accepted his rent payments from February through May 2023.

including paragraph 42.1, constitutes a breach until and unless that violation has continued for at least 10 days. Thus, when Baca accepted rent from Kuang on February 6, 2023, Kuang had not yet breached the agreement by failing to deliver up the premises as required by paragraph 42.1 because 10 days had not elapsed since the lease terminated on January 31, 2023. Because there was no "breach" by Kuang that "preced[ed]" Baca's acceptance of rent, the no-waiver provision simply does not apply here.

Citing *Woodman Partners v. Sofa U Love* (2001) 94 Cal.App.4th 766, Baca argues that "[a] virtually identical [no-waiver] provision was held enforceable" there. (Fn. omitted.) But *Woodman* is distinguishable. That case involved a three-day notice to pay rent or quit, which demanded approximately $15,000 in unpaid rent from the tenant. (*Id.* at p. 769.) The tenant failed to pay that amount within the notice period, and the landlord filed an unlawful detainer action. (*Ibid.*) About a week later, the tenant made a partial rent payment. The landlord accepted that payment but advised the tenant that it was still proceeding with the unlawful detainer. (*Ibid.*) On appeal, the tenant argued that the landlord could not maintain the unlawful detainer action because it did not give the "notice required by [Code of Civil Procedure] section 1161.1, subdivision (c) that its acceptance of the . . . partial rent payment did not constitute a waiver of any rights, including the right to possession." (*Woodman*, at p. 770) The Court of Appeal disagreed and held that the lease's no waiver provision provided the tenant "with actual notice that [the landlord's] acceptance of rent would not constitute a waiver of any breach except a breach with respect to the amount owed and accepted." (*Id.* at p. 771.) Code of Civil Procedure section 1161.1 is not implicated here and, as explained above, Kuang had not yet breached the lease when Baca accepted rent from him after the lease had terminated.

15

### 2. *Holdover Damages Setoff*

Second, paragraph 42.3 does not help Baca here. According to Baca, she did not accept Kuang's payments as "rent" pursuant to paragraph 26 of the lease agreement, the holdover provision, "but rather as a voluntary setoff to holdover damages under paragraph 42.3." (Italics omitted.) Baca's unlawful detainer complaint, however, requested holdover damages based on the fair rental value of the premises starting *on February 1, 2023*. And Baca did, in fact, ask for and recover holdover damages from that date. This means that she could not have intended to use any of Kuang's payments after February 1, 2023 as a setoff for holdover damages.

In any event, paragraph 42.3, by its terms, does not apply under the undisputed facts. That paragraph states that all lease obligations not *fully performed* at the end of the lease term "shall survive the expiration" of that term and that "*[i]n the event that Lessee's failure to perform [any of those obligations] prevents Lessor from releasing the Premises*, Lessee shall continue to pay rent pursuant to the provisions of Article 4 or Article 26 . . . until such performance is complete." (Italics added.) As explained above, Kuang had not yet breached the lease agreement when Baca accepted his rent payments after February 1, 2023 and still had a few days left under the terms of the agreement to release the premises to Baca pursuant to paragraph 42.1. (See, *ante*, at pp. 14–15.) Thus, Kuang's failure to perform a lease obligation did not prevent Baca from releasing the premises. Rather, it was Baca's unqualified acceptance of Kuang's rent payments for four months after the termination of the lease that prevented her from doing so. And because paragraph 42.3 did not require Kuang to pay rent after the lease terminated, Baca could only have accepted that rent pursuant to

16

paragraph 26—which established a month-to-month tenancy.[6]

### 3. *Initiating Unlawful Detainer*

Third, Baca's filing of the unlawful detainer action is not sufficient to rebut the presumption under the undisputed facts here. Baca only filed the action *after* she accepted the first rent payment from Kuang. Because she never returned that payment to Kuang, it is not clear how her subsequent filing of the action—which she no longer had grounds to initiate due to her earlier acceptance of rent from Kuang—could rebut the presumption. In any event, Baca continued to accept rent and CAM payments from Kuang for three months after she filed the action—without any qualifications or objections. More significantly, Baca *never* refunded any of Kuang's payments even after she realized that Kuang should not have been invoiced for any monthly rent or CAM charges. As such, each time Baca accepted a rent payment from Kuang without qualification or objection after she filed the unlawful detainer action, a new presumption that Baca had renewed the lease was created. And each new presumption could not be rebutted by the filing of an action that preceded her acceptance of those payments. In any case, the filing of the unlawful detainer action does not change the fact that Baca could only have accepted Kuang's monthly rent payments pursuant to paragraph 26, which established a month-to-month tenancy. (See, *ante*, at pp. 16–17 & fn. 6.)

Baca's enforcement of Kuang's insurance obligation under article 8 of the lease in April 2023, well after she filed the unlawful detainer action,

---

[6] The parties *only* identified paragraphs 26 and 42.3 of the lease agreement as the possible bases for Baca's acceptance of Kuang's monthly rent payments after the lease had terminated. Because Baca could not have accepted those payments pursuant to paragraph 42.3, she had to have accepted them pursuant to paragraph 26.

17

reinforces our conclusion.  Under paragraph 42.3 of the lease, that obligation did not "survive the expiration or earlier termination" of the lease "[t]erm" on January 31, 2023.[7]  Thus, by enforcing that insurance obligation, Baca necessarily relied upon paragraph 26—the only lease provision that required Kuang to comply with "all the provisions of this Lease pertaining to the obligations of the Lessee" if he remained on the premises after the lease had terminated.

Finally, Baca's subjective intent cannot defeat the presumption of renewal.  Indeed, her subjective intent has no bearing on our interpretation of section 1945.  (See *Maia v. Security Lumber & Concrete Co.* (1958) 160 Cal.App.2d 16, 21 ["Courts are bound by the statute, not by individual opinions of its interpretation"].)  It also has no bearing on our interpretation of the lease.  As this division made clear almost 40 years ago, "[i]t is the *objective* intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.  '[I]t is now a settled principle of the law of contract that the undisclosed intentions of the parties are . . . immaterial; and that the outward manifestation or expression of assent is controlling.' " (*Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1127, italics added.)

Accordingly, under the undisputed facts, Baca, by her actions and consistent with section 1945 and the terms of the lease, consented to a month-to-month tenancy with Kuang after the lease expired on January 31, 2023.  As a result, Baca had to issue another 30-day notice in order to

---

[7] Under paragraph 42.3, only the "obligations of [Kuang] under this Lease *not fully performed as of the expiration . . . of the Term* shall survive the expiration . . . of the Term."  (Italics added.)  There is no evidence that Kuang failed to comply with his insurance obligation when the lease terminated on January 31, 2023.

18

maintain her unlawful detainer action. She did not do so. Baca therefore had no grounds to evict Kuang through this unlawful detainer action, and the judgment must be reversed.[8]

E. <u>The Attorney Fees Award</u>

Because we reverse the judgment in favor of Baca, we also reverse the award of attorney fees in her favor. (*Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1332 [appellant's "appeal of the attorney fees award against him rises or falls with his appeal of the judgment"].)

## III. **DISPOSITION**

The unlawful detainer judgment and the $51,560 award of attorney fees against Kuang are reversed. Kuang is awarded his costs on appeal.


CHOU, J.

We concur.


JACKSON, P. J.


BURNS, J.


*Baca v. Kuang*/A171071

---

[8] Because we find that there is no evidence to rebut the statutory presumption that Baca consented to the renewal of the lease on a month-to-month basis, we need not reach Baca's other arguments.

19

Trial Court:       Alameda County Superior Court

Trial Judge:       Hon. Victoria Kolakowski, Hon. Keith Kern Fong, Hon. Sarah Sandford-Smith

Counsel:       Hoge Fenton Jones & Appel, Steven J. Kahn, Giuliana Rose Ferrante and Dennis Scott Zell for Plaintiff and Respondent

Kaw Law, Kavin A. Williams for Defendant and Appellant