Filed 4/9/26  Carry v. Boys' & Girls' Club of Santa Monica CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| EILEEN CARRY et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> BOYS' & GIRLS' CLUB OF SANTA MONICA et al., <br><br> Defendants and Respondents. | B344902 <br><br> (Los Angeles County Super. Ct. No. 22STCV15060) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maurice A. Leiter, Judge.  Affirmed.

Nina P. Aritonova for Plaintiffs and Appellants.

Meller & Floyd and Harry E. Floyd for Defendants and Respondents.

\* \* \* \* \* \*

Residential tenants who were ordered evicted in an unlawful detainer action obtained a stay of the eviction pending an appeal to the Appellate Division. The stay order obligated the tenants to make monthly payments of "rent" in a specific amount until the stay was lifted. When the landlord moved to lift the stay seven months after the appeal was concluded in the landlord's favor, the tenants opposed the landlord's motion and filed this lawsuit for a judgment declaring that the landlord's conduct in accepting the monthly payments for $17 less than the amount specified in the stay order (as well as not immediately seeking to lift the stay) amounted to the landlord's consent to reinstate the lease. The trial court rejected the tenants' declaratory relief claim and entered judgment for the landlord. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    The Tenants Breach the Lease

Since 1994, Eileen Carry and Sylvia Merino (the tenants) have rented a ground-floor, four-bedroom condo in a rent-controlled building on Second Street in Santa Monica, just a few blocks from the ocean. Among other things, the lease prohibited the tenants from "'violat[ing] any law or commit[ting] or permit[ting] any . . . nuisance in or about[] the premises.'"

By 2017, the Boys' & Girls' Club of Santa Monica (the Club) had acquired ownership of the tenants' unit. The Club hired Robert J. Sullivan, Inc. (the landlord), doing business as Sullivan-Dituri Co., to manage the unit, and authorized it to act as its

2

attorney in fact as well to prosecute unlawful detainer actions in the landlord's own name, albeit on the Club's behalf. By 2017, the monthly rent on the unit was $1,865.

In December 2017, the City of Santa Monica issued a notice of violation and administrative citation to the Club because the tenants had erected a six-foot tall lattice fence that "created 'a solid barrier'" around their patio, and this fence violated the local municipal code. The landlord served multiple three-day notices on the tenants, demanding that they remove the fence or quit the premises, but the tenants repeatedly refused to comply. When the landlord hired a contractor to remove the fence in February 2018, the tenants called the police. Two days after the contractor removed the fence, the tenants re-erected it, prompting the City to issue—and the Club to pay—two more administrative citations.

## II.    The Landlord Brings an Unlawful Detainer Action and Prevails

In November 2018, the landlord filed an unlawful detainer action against the tenants, alleging that their refusal to remove the unlawful fencing breached the lease's express prohibitions against violating the law and creating nuisances.

Merino defaulted by failing to appear in the action.[1]

Carry proceeded to a bench trial in April 2019.

The trial court entered judgment against the tenants, jointly and severally, and declared the lease forfeited.

---

[1]    Although it appears that Merino filed a motion to set aside the unlawful detainer judgment and to quash any writ of execution, the record does not contain a ruling on that motion.

## III. The Tenants Obtain a Stay of Enforcement of the Unlawful Detainer Judgment Pending Appeal

On June 7, 2019, and in response to Carry's request, the trial court granted a stay of the unlawful detainer judgment under the condition that, as pertinent here, the tenants pay the landlord "[r]ent in the amount of $1,882 . . . on the 1st day of each month going forward." That amount was $17 *more* than the monthly rent owed under the lease. If the tenants violated the court's stay order, the landlord was entitled to "possession of the premises" on an ex parte basis.

## IV. The Tenants Make Monthly Payments to the Landlord Until the Stay Is Lifted

From June 2019 through August 2021, the tenants mailed the landlord monthly payments in two checks—one for $933 and the other for $932; together, the checks totaled $1,865, which was the amount of rent owed under the lease but $17 short of the amount set forth in the stay order. The landlord cashed the checks, not noticing the $17 discrepancy; the tenants did not call the shortfall to the landlord's attention.

On August 12, 2021, the Appellate Division issued an opinion that affirmed the unlawful detainer judgment. The remittitur issued on October 15, 2021.

The tenants continued sending two checks totaling $1,865 from September 2021 through March 2022, and the landlord continued to cash those checks.

The landlord did not cash the checks the tenants sent in April and May 2022, instead returning those checks to the tenants' counsel.

Throughout this period, Carry "repeatedly interfered" with renovations being conducted at the condominium building,

4

boarded up the unit's patio with "no trespassing signs," and assaulted a resident and a contractor.

## V. The Stay Is Lifted, a Writ of Possession Is Issued, and the Tenants Are Evicted

On May 5, 2022, the landlord filed an ex parte application to vacate the stay of enforcement of the judgment. The trial court entertained a full round of briefing and convened a hearing. In her opposition, Carry argued that the landlord's collection of "steady rent payments" after the Appellate Division issued its remittitur in October 2021 functioned to "reinstate" the tenancy. The landlord explained that it had not "promptly" moved the court to lift the stay because its counsel's practice had become "overwhelmed with COVID-19 related matters."

On May 23, 2022, the trial court lifted the stay, thereby allowing the landlord to obtain a writ of execution for possession of the tenants' unit. The court ruled that the tenants had "no basis" to assert that "a new tenancy" had been established or that the "former tenancy [was] reinstated" because the tenants' monthly payments were "nothing more than consideration for the maintenance" of the stay, and the landlord's acceptance of those payments accordingly did not constitute intentional relinquishment of any rights to enforce the unlawful detainer judgment.

Flouting the court's ruling, the tenants continued to send monthly payments:

-- In June 2022, the tenants mailed checks totaling $1,865 to the landlord. The landlord returned the payments to the tenants' counsel.

-- In July 2022, the tenants for the first time mailed checks totaling $1,865 to the Club's CEO without any

5

accompanying documentation, in a calculated effort to "see what" the Club would do.  Because the CEO oversees 11 of the Club's locations and because the Club regularly receives unsolicited donations, the CEO at first glance assumed that the tenants' checks were donations to the Club and mistakenly deposited them.  When the Club discovered its error, the Club refunded the tenants' payments, although the tenants refused to cash the refund checks.

In late July 2022, the Los Angeles Sheriff's Department executed the writ and the tenants vacated the apartment.

## VI.    The Tenants Sue the Landlord for Declaratory Relief

On the same day that the landlord filed its ex parte application to lift the stay in the unlawful detainer action, the tenants commenced a separate lawsuit for declaratory relief.  In the operative first amended complaint, they sued the Club and the landlord for a judicial declaration that their monthly payments through July 2022[2] "reinstated" the tenancy.

The parties proceeded to a one-day bench trial in November 2024.

The trial court issued a final statement of decision against the tenants on January 7, 2025, rejecting the declaratory relief claim on three grounds.  First, the tenants were judge-shopping by filing this separate action to effectively overturn the unlawful detainer court's ruling that their monthly payments did *not* reinstate the tenancy.  Second, the tenants were barred under the doctrine of collateral estoppel from relitigating that exact

_____

[2]     While the declaratory relief allegations concern only the tenants' payments through March 2022, the trial court allowed the evidence at trial to include the tenants' payments through July 2022.

issue again in the declaratory relief action. Third, and on the merits, the tenants' monthly payments "were made to maintain the stay [they] sought . . . to avoid an eviction" while Carry appealed, and neither the "minimal" $17 discrepancy nor the timing of the landlord's motion to lift the stay "transformed the payments into something other than what the [unlawful detainer] court ordered."

Following the entry of judgment for the Club and the landlord, the tenants timely filed this appeal.

## DISCUSSION

The tenants argue that the trial court erred in not judicially declaring that the lease had been reinstated—and their prior breach of the lease waived—due to the landlord's conduct in accepting "rent" in an amount $17 less than the "rent" required by the stay order, in continuing to accept those payments after the remittitur issued in October 2021, and in cashing the July 2022 "rent" checks. In evaluating the propriety of the trial court's ruling, we review the court's legal rulings de novo, and its factual findings for substantial evidence (through the prism of resolving any conflicts in the evidence or reasonable inferences to be drawn from the facts in support of the court's findings). (*Baca v. Kuang* (2025) 107 Cal.App.5th 1292, 1297 (*Baca*).)

## I.    Pertinent Law

It has long been a principle of California law that "[t]he acceptance of rent by [a] landlord from [a] tenant, after the breach of a condition of [a] lease"—and even after initiating an unlawful detainer action to evict the tenant on the basis of that breach—"with full knowledge of all the facts, is a waiver of the breach and precludes the landlord from declaring [or prosecuting an action based on] a forfeiture of the lease by reason of said

7

breach." (*Kern Sunset Oil Co. v. Good Roads Oil Co.* (1931) 214 Cal. 435, 440; *Jones v. Maria* (1920) 48 Cal.App. 171, 172-173 ["The acceptance of such rent by [the landlord] was a waiver of [the tenant's] forfeiture of the leasehold and of [the landlord's] right to maintain th[e unlawful detainer] action"]; *Goodwin v. Grosse* (1922) 56 Cal.App. 615, 618 [same]; *Bedford Investment Co. v. Folb* (1947) 79 Cal.App.2d 363, 366 [same]; *Baca, supra*, 107 Cal.App.5th at pp. 1294-1295 [principle applies after unlawful detainer action initiated]; see generally *People v. Douglas* (1964) 61 Cal.2d 430, 434 ["'A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege'"].)  Civil Code section 1945 codifies this principle in the context of holdover tenants by erecting a rebuttable presumption that a landlord's "accept[ance of] rent" from a tenant who "remains in possession [of real property] after the expiration" of a lease has waived the expiration of the lease's term and consented to a continuation of the tenancy.  (Civ. Code, § 1945; *Ashirwad, LLC v. Bradbury* (Jan. 29, 2026, D086343) __ Cal.App.5th __ [2026 LX 10584 at *8] (*Ashirwad*); *Baca*, at p. 1298; *Aviel v. Ng* (2008) 161 Cal.App.4th 809, 820; *City v. Hart* (1985) 175 Cal.App.3d 92, 95; *Miller v. Reidy* (1927) 85 Cal.App. 757, 762 (*Miller*).)

Whether a landlord's acceptance of rent constitutes a waiver of a prior breach—and a consequent reinstatement of the tenancy—is "a question of [the landlord's] intention."  (*Miller, supra*, 85 Cal.App. at p. 762.)  What matters for this purpose is the "objective manifestation" of the landlord's intent in accepting the payments (that is, the landlord's words and acts), and not the landlord's uncommunicated subjective intent.  (*Ashirwad, supra*, __ Cal.App.5th __ [2026 LX 10584 at *12]; *Smith v. Ogbuehi*

8

(2019) 38 Cal.App.5th 453, 475 [looking to "words" and "conduct"]; cf. *Baca*, *supra*, 107 Cal.App.5th at pp. 1299, 1305 [subjective intent irrelevant].)

## II.     Analysis

The trial court did not err in determining that the landlord never objectively manifested an intent to forgive the tenants' prior breach of the lease by accepting the monthly payments of "rent" contemplated by the stay order while that order was in effect.  The money the landlord accepted from the tenants did not arrive unbidden; to the contrary, the tenants' monthly payments of "rent" were explicitly made a condition of the stay order *the tenants requested*, and such payments are also a statutory prerequisite for any stay of an unlawful detainer judgment (Code Civ. Proc., §§ 917.4 [enforcement of judgment directing the delivery of possession of real property may not be stayed "unless an undertaking in a sum fixed by the trial court is given"], 1176, subd. (a) [when granting stay of enforcement of unlawful detainer judgment, trial court must "order the payment of the reasonable monthly rental value to the court monthly in advance as rent would otherwise become due as a condition of issuing the stay"]). Consistent with treating the monthly payments as consideration for the stay rather than as establishing a new tenancy, the landlord returned the checks the tenants submitted *after* that stay was lifted.  The landlord's acceptance of the rent payments mandated by the stay order and by statute in no way manifested an intention to abandon the underlying unlawful detainer judgment necessitating that stay order.

The tenants offer three reasons why we must nevertheless still construe the landlord's acceptance of monthly "rent" as consent to reinstate their tenancy.

9

First, the tenants argue that their monthly payments during the pendency of the stay should not be treated as payments pursuant to the stay order because those payments were $17 short of the amount set forth in the stay order; any deviation from the stay order in the amount paid and accepted, the tenants assert, automatically entitles the tenants to reinstatement of the lease. We disagree. The deviation here was minor ($17 out of a total of $1,882 owed) (see *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1051 [courts allow termination of a contract "only if the breach can be classified as 'material,' 'substantial,' or 'total'"]), was harder to detect because the tenants submitted two checks, and was not accompanied by any notation calling attention to the discrepancy or its significance. To hold that such a minor deviation in the amount paid pursuant to a stay order constitutes a waiver would ignore the broader context in which the payments were made and would invite attempts by tenants to entrap landlords into reinstating tenancies by quietly paying pennies less and hoping the landlord does not notice.

Second, the tenants argue that the landlord's seven-month delay in seeking to lift the stay after the remittitur issued manifested an intent to reinstate the tenancy, ostensibly on a laches-type theory. We disagree. Contrary to what the tenants imply, the stay did not automatically terminate upon issuance of the remittitur (see Code Civ. Proc., § 917.4 [payments under a stay continue "until the delivery of the possession of the property"]); instead, the landlord had to seek a further court order, which it did. Although the landlord did not seek that order for more than six months, that delay does not constitute laches, which requires an "unreasonable delay" that "results in

10

prejudice" to the adverse party. (*In re Marriage of Goldman* (2025) 107 Cal.App.5th 1258, 1262-1263.) Here, the landlord explained that its delay was due to an influx of COVID-related matters, rendering it reasonable. More the point, the tenants were not prejudiced by being able to remain in the unit while making the payments dictated by the stay order and while fully aware that their payments were pursuant to the stay order, which obviated any unreasonable expectation they might have developed that their payments were somehow reinstating the tenancy.

Lastly, the tenants argue that the Club CEO's cashing of the July 2022 checks reinstated the tenancy. We disagree. A landlord's mistaken cashing of a single rent check does not constitute a waiver, particularly when that check is later refunded. (See *Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 738-741 [no presumption of tenancy where tenant continued to submit monthly rent checks despite settlement agreement requiring tenant to vacate premises and landlord returned all checks except one which was "mistakenly deposited" and then "refund[ed]"]; cf. *Baca, supra*, 107 Cal.App.5th at p. 1299 [presumption of tenancy where landlord's "decision to deposit and retain [tenant's] payments pursuant to [rent] invoices was not inadvertent"].) We are especially loathe to find a waiver where, as here, the tenants freely admitted to trying to engineer acceptance of post-stay rent checks by sending them to the Club's CEO just "to see."

At bottom, the landlord's acceptance of monthly payments the tenants paid as a condition of the stay of the unlawful detainer judgment did not constitute a waiver of that judgment. The tenants' efforts to trip up the landlord by sending the wrong

amount and then sending checks to the Club rather than the landlord do not alter this result. A landlord's waiver of a breached lease is not a game of "gotcha," where a single misstep or delay by the landlord automatically entitles a tenant to a new tenancy.

\* \* \*

In light of our conclusion that the landlord prevails on the merits, we have no occasion to reach the parties' further arguments regarding whether the tenants' declaratory relief claim was also barred by the doctrine of collateral estoppel.

**DISPOSITION**

The order is affirmed. The landlord and the Club are entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, P. J.
HOFFSTADT

We concur:

_____, J.
BAKER

_____, J.
KIM (D.)

12