Filed 4/30/26  An v. Matsuura CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| BIN AN et al., | |
| Plaintiffs and Respondents, | G065032 |
| v. | (Super. Ct. No. 30-2022-01252784) |
| BRETT MATSUURA et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, Andre De La Cruz, Judge. Affirmed filed

Brett Matsuura, in pro. per., for Defendant and Appellant Brett Matsuura.

Dana Samhouri, in pro. per., for Defendant and Appellant Dana Samhouri.

No Appearance for Plaintiffs and Respondents.

\*          \*          \*

## INTRODUCTION

Defendants Brett Matsuura and Dana Samhouri (Defendants) were tenants, and Plaintiffs Binn An and Xialong Liu (Plaintiffs) were landlords, under a lease of residential property in Irvine. Defendants appeal from a judgment awarding Plaintiffs $110,700.96 in unpaid rent, reasonable value of the use of the residence, and prejudgment interest. Defendants contend the trial court erred by awarding damages for the period following the termination of the lease and, due to the government response to the COVID-19 pandemic, Civil Code section 1511 excused their performance of paying rent.

We conclude the trial court erred by awarding Plaintiffs damages based on Defendants' occupancy of the residence after the lease terminated. Once the lease terminated (either on October 21, 2020 or December 31, 2020), Defendants became holdover tenants and had no further obligation to pay rent under the lease. As holdover tenants, without the landlord's consent, Defendants were liable in tort for damages based on the reasonable value of their use of the premises. Plaintiffs did not, however, sue in tort: They sued only for breach of contract and therefore their damages were limited to unpaid rent accruing before the lease was terminated.

Civil Code section 1511 did not excuse Defendants for their obligation to pay rent. In response to the COVID-19 pandemic and governmental response to it, the Legislature enacted COVID-19 Tenant Relief Act (the Tenant Relief Act), Code of Civil Procedure former section 1179.01 (repealed by Code Civ. Proc., former § 1179.15). The Tenant Relief Act did not excuse payment of rent but protected tenants from eviction for failure to pay rent during certain specified time periods. The Tenant Relief

2

Act controls over Civil Code section 1511 and, in any case, Defendants failed to present evidence they fell within its protections.

We therefore reverse the judgment as to the award of damages and remand to the trial court with directions to determine the date of lease termination and recalculate the amount of damages in accordance with this opinion.

**FACTS AND PROCEDURAL HISTORY**

In November 2017, Defendants, as tenants, and An, as landlord, entered into a residential lease (the Lease) for a home in Irvine (the Premises). Rent was $3,700 per month. Defendants were required to pay $3,700 as a security deposit.

In January 2020, Defendants and Plaintiffs entered into an extension of lease which extended the scheduled termination date of the Lease to December 31, 2020. Both An and Liu are identified as landlords on the extension of lease.

Defendants did not pay rent for the period of April 2020 through December 2022. Defendants claimed they were unable to pay rent due to regulations imposed in response to the COVID-19 pandemic, which impaired their ability to work and caused a dramatic decrease in their income. From January 2021 through March 2022, Defendants did not pay Plaintiffs anything for use of the premises.

In April 2020, Matsuura sent an e-mail to a representative of the Plaintiffs to inform them of Defendants' financial hardship.[1] On September 30, 2020, Defendants were served with a 15-day notice to pay rent or quit the Premises and with a notice from the State of California attached with a "Declaration of COVID-19 Related Financial Distress."

In August 2021, Plaintiffs filed an unlawful detainer action against Defendants.[2] Attached to the unlawful detainer complaint was a copy of a proof of service on Defendants of another 15-day notice to pay rent or quit the Premises and of a notice from the State of California with a "Declaration of COVID-19 Related Financial Distress." The proof of service reflects a service date of April 28, 2021. Also attached to the unlawful detainer complaint was a copy of a three-day notice to quit the Premises signed by An on August 17, 2021. The proof of service of this three-day notice reflects a service date of August 17, 2021.

Defendants vacated the Premises on March 28, 2022. On March 24, 2022, Plaintiffs dismissed the unlawful detainer action.

In April 2022, Plaintiffs filed a civil complaint against Defendants. The complaint alleged a single cause of action for breach of contract based on failure to pay rent under the Lease. The complaint alleged that Defendants "breached said agreement [the Lease] by refusing to pay the sums due thereon from April 2020 through March, 2022."

---

[1] Trial exhibit 13 is an e-mail dated April 6, 2020 from Matsuura to the Plaintiffs' representative, Ben Tsai. The e-mail states it is notification "that due to the COVID-19 situation, I will not be able to pay the rent due for this month and subsequent months." Exhibit 13 was used for examining witnesses but was never identified and admitted into evidence.

[2] At trial, the court took judicial notice of the unlawful detainer complaint.

A bench trial was conducted on September 18, 2024. Defendants contended the Lease had expired on October 21, 2020 upon the expiration of the 15-day notice and, therefore, Plaintiffs could not recover rent. Defendants also argued their performance under the Lease was excused pursuant to Civil Code section 1511.

The trial court found in favor of Plaintiffs. Judgment was entered awarding Plaintiffs $85,100 in damages and prejudgment interest in the amount of $29,300.96. Defendants were awarded $3,700 as the return of their security deposit. Defendants timely appealed from the judgment.

## DISCUSSION

### I.
### The Trial Court Erred by Awarding Plaintiffs Damages for Holding Over

Defendants argue the Lease terminated when the 15-day notice expired on October 21, 2020 and, once the Lease terminated, they no longer were liable to pay rent. The trial court erred, Defendants argue, by awarding Plaintiffs recovery for unpaid rent through the date on which they vacated the Premises. We agree.

Plaintiffs were entitled to recover unpaid rent up to the date on which the Lease terminated. Defendants contend the Lease terminated on October 21, 2020 upon expiration of the 15-day notice. If the Lease did not terminate on that date, then it terminated of its terms on December 31, 2020.

After termination of the Lease, Defendants become holdover tenants or tenants at sufferance. (*Colyear v. Tobriner* (1936) 7 Cal.2d 735, 742; *Peter Kiewit Sons' Co. v. Richmond Redevelopment Agency* (1986) 178 Cal.App.3d 435, 445 ["When the term of a lease expires but the lessee holds

5

over without the owner's consent, he becomes a tenant at sufferance"].) A holdover tenant may be liable for the reasonable value of the use and occupation of the property during the period of holding over. (*Colyear v. Tobriner, supra*, 7 Cal.2d at p. 742; *Aviel v. Ng* (2008) 161 Cal.App.4th 809, 820 ["[T]he holdover tenant is liable for the value of the use and occupation of the premise during the time of holding over"]; *11382 Beach Partnership v. Libaw* (1999) 70 Cal.App.4th 212, 218 ["A landlord is entitled to value of the use of the property for the period of wrongful occupation"]; *Glouberman v. Coffey* (1955) 138 Cal.App.2d Supp. 906, 907.) ["If a tenant unlawfully detains possession after the termination of a lease, the landlord is entitled to recover as damages the reasonable value of the use of the premises during the time of such unlawful detainer"].)

The landlord's right to recover damages from a holdover tenant does not arise from the lease for "[t]here is no contractual relationship between a holdover tenant and the landlord." (*Aviel v. Ng* (2008) 161 Cal.App.4th 809, 820; *Glouberman v. Coffey, supra*, 138 Cal.App.2d Supp. at p. 907-908 [Landlord cannot recover rent for occupation of premises after the lease has terminated "because the leasehold interest has ended"].) Instead, a landlord's right to recover from a holdover tenant sounds in tort. "'If the right to recovery is based upon a civil wrong such as possession of property by a trespasser ab initio, or by a holdover tenant as a resulting trespasser, or by an encroacher then the right to recover possession of the property by way of the summary and statutory procedure of unlawful detainer has its inception in tortious conduct.'" (*Drybread v. Chipain Chiropractic Corp.* (2007) 151 Cal.App.4th 1063, 1075, quoting *Fragomeno v. Insurance Co. of the West* (1989) 207 Cal. App. 3d 822, 830-831.) In an action against a holdover tenant, the landowner's measure of recovery is set by Civil Code section 3334 for

6

wrongful occupation of property, not for breach of contract. (*Richmond Wharf & Dock Co. v. Blake* (1919) 181 Cal. 454, 457.)

*Buhman v. Nickels & Brown Bros.* (1908) 7 Cal.App. 592, though an old case, is illustrative of how recovery for unpaid rent can differ from holdover damages. There, the Court of Appeal explained: "It is asserted that respondents were entitled to recover only $ 750, being treble the amount of the rent provided in the lease. This conclusion is based upon the erroneous view that respondents sought to recover under the lease. The lease had been terminated by the notice given and defendant was unlawfully holding over under a claim that it had the right to retain possession by virtue of a perfected appeal. Hence the action was for the value of the use of the property, as provided in section 3334 of the Civil Code. This value was alleged to be $1,255 and this was not defined by the answer." (*Id.* at p. 596.)

In an unlawful detainer action, the landlord may recover both unpaid rent and damages for holding over. The Judicial Council form UD complaint under the part called "Plaintiff Requests" (paragraph 19) has separate boxes to check for past-due rent and damages in the form of fair rental value. "Technically, the amount due the landlord after the expiration of the three-day notice to pay rent or quit is damages, not rent." (*Medford v. Superior Court* (1983) 140 Cal.App.3d 236, 238, fn. 1., citing Code Civ. Proc., § 1174, subd. (b).) A tenant who continues in possession of the property after the expiration of the notice period or the expiration of the lease term is by statutory definition guilty of unlawful detainer. (Code Civ. Proc., § 1161, subd. (1).)

But the landlord's right to recover holdover damages in an unlawful action is based on tort. "An unlawful detainer action can be an action that is tort-based rather than contract-based when the action is not

7

based on a breach of the lease—for example, an unlawful detainer action based on the tenant holding over after the lease expires." (Matthew Bender, Calif. Forms of Pleading and Practice, § 174.54[7].) "If the unlawful detainer seeks to oust and collect damages from a *holdover* tenant (following expiration of a lease), it is essentially premised on *tortious* conduct in that the holdover tenant is effectively trespassing." (Friedman et al., Cal. Practice Guide: Landlord–Tenant (The Rutter Group 2025) ¶ 8:9.1, p. 5.)

After the Lease terminated, Defendants became holdover tenants and, as such, had no contractual relationship with Plaintiffs and no obligation to pay them rent. To recover holdover damages from Defendants, Plaintiffs had to plead and prove tortious conduct or unlawful detainer. But Plaintiffs dismissed their unlawful detainer action and chose to proceed on their civil action, which asserted only a breach of contract cause of action based on breach of the Lease. The complaint alleged and recited in general terms the elements of a breach of contract cause of action. The complaint alleged that Defendants "*breached* said agreement [the Lease] by refusing to pay the sums due thereon from April 2020 through March, 2022," that "[a]s a result of said defendants' *breach*, plaintiffs have been damaged in a sum according to proof but not less than $85,100," and that "[a]s a further result of said defendants' *breaches*" Plaintiffs incurred consequential damages and attorney's fees. (Italics added.)

The complaint did not assert a tort cause of action or allege any type of tortious conduct such as trespass, wrongful occupation, or unlawful detainer. The complaint did not allege Plaintiffs suffered damages caused by Defendants' trespass or wrongful occupation of the Premises. The complaint did not seek tort damages such as reasonable rental value.

When, as here, the landlord brings an unlawful detainer action and possession of the property is delivered to the landlord before trial or judgment, the unlawful detainer action can become an ordinary civil action. (Civ. Code, § 1952.3, subd. (a); see *Fish Construction Co. v. Moselle Coach Works* (1983) 148 Cal.App.3d 654, 658 ["delivery of possession of the leased property converts an unlawful detainer into an ordinary civil case"]. Conversion of the unlawful detainer into an ordinary civil action is required. (*Karz v. Mecham* (1981) 120 Cal.App.3d Supp. 1, 5.) In that ordinary civil action, the landlord "may obtain any relief" to which the landlord is entitled, including unpaid rent and "the amount by which the unpaid rent which would have been earned after termination" exceeds the amount of rental loss which the lessee proves could have been reasonably avoided. (Civ. Code, §§ 1951.2, subd. (a)(1) & (2), 1952.3, subd. (a)(1).)

Although Defendants vacated the Premises in March 2022, Plaintiffs did not allow their unlawful detainer action to become an ordinary civil action. Instead, Plaintiffs dismissed the unlawful detainer action and proceeded with the separate, previously filed civil lawsuit, which alleged only breach of contract.

Plaintiffs asserted in their trial brief that regardless whether Defendants were liable to pay "rent per se," they were liable for "the reasonable rental value of the property." But nowhere in the trial brief did Plaintiffs claim they were asserting Defendant had wrongfully held over based on trespass or another tort for which Plaintiffs could recover tort damages. Plaintiffs never sought leave to amend their complaint to add a cause of action based on tortious conduct. As Defendants argued to the trial court: "[T]he Plaintiff's complaint only seeks to recover past rent, and there's

9

no claim for damages such as reasonable rent nor have they provided an outline as to their damages other than rent."

Because Plaintiffs only sued for breach of contract, their recovery was limited to breach of contract damages, which amounted to the unpaid rent accruing before the Lease terminated. After the Lease terminated (on either October 21 or December 31, 2020), Defendants did not owe any rent under the Lease and consequently were not in breach by failing to pay. The trial court erred by awarding Plaintiffs damages in the amount of reasonable rental value from the date of Lease termination to the date Defendants vacated the premises because Plaintiffs did not allege a tort cause of action entitling them to holdover damages.

## II.
## Neither Civil Code Section 1511 Nor the Tenant Relief Act Excused Defendants' Obligation to Pay Rent

Civil Code section 1511 provides that a party's contractual obligation to perform a contract is excused if "performance . . . is prevented or delayed . . . by the operation of law" or when performance "is prevented or delayed by an irresistible, superhuman cause." Defendants argue that the COVID-19 pandemic was such an "irresistible, superhuman cause" and that government orders and regulations which, among other things, required people to stay at home was the law operating to prevent or delay their obligation to pay rent.

On March 4, 2020, in response to the COVID-19 pandemic, the Governor of California declared a state of emergency and on March 19, 2020 issued Executive Order N-33-20. In the executive order, the governor ordered "all individuals living in the State of California to stay at home or at their place of residence except as needed to maintain continuity of operations of

10

the federal critical infrastructure sectors."[3] The Legislature responded to the COVID-19 pandemic and Executive Order N-33-20 by enacting the Tenant Relief Act, Code of Civil Procedure former section 1179.01 (repealed Code Civ. Proc., former § 1179.15). When enacting this measure, the Legislature declared that "[m]easures necessary to contain the spread of COVID-19 have brought about widespread economic and societal disruption, placing the state in unprecedented circumstances" and "[s]tabilizing the housing situation for tenants and landlords is to the mutual benefit of both groups and will help the state address the pandemic, protect public health, and set the stage for recovery." (Legis. finding, Stats. Ch. 37, § 2.)

The Tenant Relief Act protected tenants from eviction for failure to pay rent that came due during the "protected time period," defined as March 1, 2020 through August 31, 2020. (Code Civ. Proc., former § 1179.02, subd. (f).) The version of former section 1179.04 which covered the relevant time period here provided that if a tenant failed to make rental payments coming due between March 1, 2020 and August 31, 2020 due to decreased income or increased expenses due to the COVID-19 pandemic, the tenant could not be evicted for nonpayment. (Code Civ. Proc., former § 1179.04, subd. (a).) That version of section 1179.04 also provided that if the tenant was unable to pay rent that came due between September 1, 2020, and January 31, 2021 due to decreased income or increased expenses due to the COVID-19 pandemic, the tenant could not be evicted if the tenant paid 25 percent of the rental payments missed during that time period on or before January 31, 2021. (*Ibid.*)

---

[3] We take judicial notice of Executive Order N-33-20. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

The Tenant Relief Act did not excuse the tenant from paying rent but provided in no uncertain terms that the tenant remained obligated to pay unpaid rent and could be sued by the landlord for it. (Code Civ. Proc., former § 1179.03, subds. (b)(4).) The Tenant Relief Act only protected tenants from eviction (see Code Civ. Proc., § 1179.03.5, subd. (a)(3)(A)(ii)(I)), and Defendants were never evicted for failure to pay rent. Indeed, Defendants were never evicted: They voluntarily left the premises in March 2022.

The Tenant Relief Act provided relief to tenants for inability to pay rent due to the state of emergency declaration or by the "irresistible, superhuman cause" that was the COVID-19 pandemic. The Tenant Relief Act, as the later and more specific statue, controls over Civil Code section 1511, the earlier, general statute. (*Boermeester v. Carry* (2023) 15 Cal.5th 72, 92, fn. 6.)

To the extent Civil Code section 1511 provided tenants additional protection, it does not help Defendants. At trial, Samhouri testified that Executive Order N-33-20 caused a "significant drop" in family income but specified no time frame for this drop. Defendants offered into evidence an income ledger (the court sustained an objection to it) but the ledger ended with July 2020, and no other evidence was offered as to income at any specific point in time after July 2020. No evidence was offered as to income as of March 2022, when Defendants vacated the premises, or as of September 2024, when the case was tried. No evidence was offered as to lack of other sources of payment, such savings or investments. In short, Defendants did not present sufficient evidence to prove any inability to pay rent was prevented by "the operation of law" or "an irresistible, superhuman cause."

12

## DISPOSITION

The judgment as to the amount of damages is reversed and the matter is remanded to the trial court to determine the date on which the Lease terminated and to recalculate the amount of damages accordingly. Defendants may recover costs on appeal.


SANCHEZ, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


MOORE, J.